# CHARLESTON.

## CRUMLISH'S ADM'R *v.* SHEN. VAL. RAILROAD CO.

Submitted June 29, 1886.—Decided October 30, 1886.

| | |
|---|---|
| 28 | 623 |
| 31 | 806 |
| 32 | 251 |
| 33 | 762 |
| 28 | 623 |
| 41 | 69 |
| 41 | 582 |
| 28 | 623 |
| 43 | 494 |
| 28 | 623 |
| 51 | 617 |
| 28 | 623 |
| 58 | 430 |

1. According to the ancient and strict rules of pleading matters, which occurred after the filing of the original bill could not be introduced into the suit by an amended but only by a supplemental bill, but this rule is not now enforced, and such matters may be introduced by amended bill. (p. 630.)

2. A bill is not multifarious, which is filed by a stockholder on behalf of himself and the other stockholders of a dissolved corporation for the purpose of compelling a defendant having in his possession property of said corporation or owing debts to it to account for and pay over the same, and which also asks, that the creditors of such corporation may be convened and its assets distributed among its creditors and stockholders. (p. 631.)

3. It is ordinarily necessary, before a court of equity can interfere with the management of a corporation at the suit of a stockholder, to show that the directors or managing officers having control of it have refused to act in its behalf. But, if it be made to appear in any manner, that the corporation can not safely be left to obtain relief through the action of its officers, equity will interfere at the suit of a stockholder without proof of a demand upon the managing agents and their wrongful refusal or neglect to proceed on its behalf. (p. 632.)

4. When it is shown that the corporation has ceased to exist either in law or in fact, or that it has abandoned its corporate business and neglected to maintain its corporate existence by the election of directors and the appointment of officers to manage its affairs, a stockholder may without showing more bring suit on behalf of himself and the other stockholders against the corporation or others having assets belonging to it for the protection of his rights. (p. 633.)

5. After a corporation has been dissolved or its charter declared forfeited, the stockholders occupy towards it the position of deferred creditors, and they may in such case sue as any other creditor to have its assets administered. (p. 634.)

6. A suit is brought by a stockholder of a foreign corporation on behalf of himself and the other stockholders against a domestic corporation having property in this State belonging to said foreign corporation or owing debts to it; and the bill shows that the foreign corporation had ceased to use its franchises, and been dis-

solved by virtue of the laws of the State of its creation, and had no property or assets except those in the hands of the said domestic corporation and within the jurisdiction of the court, HELD :

I. The courts of this State have jurisdiction of such suit, notwithstanding the fact that said foreign corporation can not be brought within the jurisdiction of such courts :

II. The said foreign corporation is not an indispensible party to such suit. (p. 635.)

7. Where such suit is brought within less than four years from the time the cause of action arose, and it does not appear that any of the parties have died, or that the rights of third persons have intervened, or that there has been any loss of evidence, the doctrine of laches has no application. (p. 637.)

*D. B. Lucas, McDonald & Moore* and *F. Beckwith* for appellant.

*W. H. Travers* for appellees.

SNYDER, JUDGE :

Suit in equity instituted, December rules, 1882, in the circuit court of Jefferson county by the administrator of H. H. Crumlish, deceased, suing on behalf of himself and all the other stockholders of the Central Improvement Company, against the Shenandoah Valley Railroad Company, and the said Central Improvement Company, to restrain the said railroad company from disposing of, and to compel it to account for, certain assets of said Improvement Company, and to have the court by its receiver or otherwise take possession of these assets and administer the same among the creditors and stockholders of said Central Improvement Company.

On December 18, 1884, the court made an order sustaining the demurrer of the said railroad company to the plaintiff's bill and granted him leave to file an amended bill which was accordingly done at April rules, 1885. The railroad company also demurred to this bill, and on March 1, 1886, the court entered a decree sustaining the demurrer and dismissing both the original and amended bills, but without prejudice to a new suit. From this decree J. Garland Hursh, sheriff of Jefferson county, and as such administrator of H. H. Crumlish, deceased, appealed to this Court.

The only questions to be determined by this Court are,

whether or not the rulings of the circuit court sustaining said demurrer and dismissing the plaintiff's bills were erroneous? In considering these questions, according to well settled principles, all the facts properly pleaded in the bills must be taken to be true.

Omitting details and such allegations as have no bearing on the questions to be decided, as well as some other averments which will be hereafter specially stated and considered, the case made by the bill is as follows:

The Shenandoah Valley Railroad Company is a corporation chartered by the laws of both the State of Virginia and this State, authorized by its charters to construct a railroad from the Potomac river at or near Shepherdstown, through the county of Jefferson in this State and through Clarke, Warren, Page and other counties in Virginia. The said railroad has been constructed and equipped and is now in full operation. The Central Improvement Company was chartered and organized under the laws of the State of Pennsylvania with authority to construct and equip works of internal improvement. Its paid up capital stock is about $150,-000.00, of which the plaintiff's intestate was the owner and the plaintiff as administrator is now the holder of two certificates for 100 shares each of the par value of $50.00 per share. In the winter of 1873, or the spring of 1874, upon a final settlement then had between the said railroad company and said Central Improvement Company, it was agreed that the latter should receive from the former in settlement for work done by the Central Improvement Company, in the construction of said railroad, certain bonds of the counties of Clarke and Jefferson, certificates of paid up stock in the said railroad company to the amount of $500,000.00, and first mortgage bonds of the railroad company to the amount of $781,000.00. The mortgage to secure these bonds was executed about the year 1870, by the railroad company on its track and other property in the counties aforesaid to J. Edgar Thompson, the then president of the Pennsylvania Railroad Company, and was duly recorded in Jefferson and other counties along the line of its road. In the fall of 1873, the Central Improvement Company transferred to the Pennsylvania Railroad Company

the said county bonds, the $500,000.00 of paid up stock and $250,000.00 of said first mortgage bonds as collateral security for money borrowed by it from said Pennsylvania Railroad Company, so that of said issue of $781,000.00 the Central Improvement Company is now entitled to hold only $531,000.00. All the stocks and bonds so transferred to the Pennsylvania Railroad Company have been sold by it and the proceeds credited on its debt against the Central Improvement Company, leaving a large balance still due on said debt. In addition to the mortgage above mentioned the Shenandoah Valley Railroad Company subsequently executed two other mortgages on its property. All the bonds issued under said first and second mortgages were in the year 1879 destroyed, including the $531,000.00 belonging to the Central Improvement Company, and the said mortgages released, with the understanding that the bonds secured by the released mortgages were to be substituted by bonds issued under the third mortgage. The bonds to be substituted for the $531,000.00 belonging to the Central Improvement Company have not yet been issued, or if issued it was without the knowledge of the management or the stockholders of the Central Improvement Company, and they are held by some pretended agent for the company with the intent to make plunder of them. The said $531,000.00 of first mortgage bonds are now worth on the market nearly par value. The indebtedness of the Central Improvement Company is about $300,000.00, the larger portion of which is due to the Pennsylvania Railroad Company and the most of the residue to sub-contractors of the Central Improvement Company for work done in the construction of the Shenandoah Valley Railroad. These claims all appear as part of the "Griffith record," which is referred to and made part of the bill in this cause.

In addition to the foregoing facts the bill avers, that since the suspension of work in 1873, upon the Shenandoah Valley Railroad, the C. I. Co. has done no other work and ceased to do any business under its charter or otherwise; that all its chartered rights and franchises in the State of Pennsylvania were sold in 1874 under execution at the suit of two of its creditors in the city of Philadelphia; that prior to August 1874, R. D. Barclay was president and John P.

Green was secretary and treasurer of the C. I. Co., that they resigned their respective offices, and about that time Phillip Collins was elected president and C. W. McKeeban secretary and treasurer, and A. K. McClure was a director and counsel for the company; that there has been no meeting of the stockholders since August, 1874, and the only meeting of the board of directors held after Collins became president in 1874, was in January 1877, and that was held for the purpose of transferring to a trustee the said $500,000.00 of paid up stock as additional security for the payment of the debt of the company due to the Pennsylvania R. R. Co.; that the plaintiff's intestate during his lifetime made frequent calls upon the said Barclay, late president, and John P. Green, former secretary and treasurer, for the purpose but could never obtain any information as to the true condition of the affairs of the company; that the impression produced in his mind by these officers and others connected with the management was that the company had no assets of any kind, that it was hopelessly insolvent and there could never be anything for distribution among its stockholders; that U. L. Boyce, vice president of the Shenandoah V. R. R. Co. and the proxy to vote its stock in the meetings of said railroad company and who did vote said stock to the amount of $1,000,000.00 up to the spring of 1878 or 1879, in the meetings of said railroad company, has continuously represented the said Central Improvement Company to be entirely insolvent; that in two answers filed by the said railroad company at the instance of said Boyce, and one of them sworn to by him, in the said "Griffith suit," the averment of the utter insolvency of the Central Improvement Company is iterated and reiterated, and the same statement is repeated in his deposition in the "Griffith suit" as well as made in the depositions of Collins, president of the Central Improvement Company, and of A. K. McClure, one of its directors and counsel, taken and filed in said suit; that all of these statements are untrue and were made continuously for the purpose of misleading and deceiving the creditors and stockholders of the Central Improvement Co.; that the plaintiff believes there will be for distribution among the paid up stock after the payment of all the debts of the said company, at least

$500,000.00 of the first mortgage bonds of the said railroad company of nearly par value; that the aforesaid Shenandoah Valley R. R. bonds are the only assets of the Central Improvement Company, and inasmuch as they are in danger of being entirely lost to it by the said railroad company issuing the mortgage bonds to be substituted therefor to some party or parties not entitled to or authorized to receive them, who may transfer them to others for value without notice of the equities herein asserted, the plaintiff prays that the Shenandoah Valley R. R. Co. may be restrained by injunction from issuing or transferring said bonds to any one until the further order of the court; that the creditors of said Central Improvement Company, may be convened and their several debts ascertained; that said debts be paid from the proceeds of said bonds and the residue distributed among the stockholders of said company, and for general relief.

The "Griffith suit," the record of which is made a part of the plaintiff's bill as therein stated, was a suit brought in the circuit court of Warren county, Virginia, December 1876, and afterwards removed to Clarke county in said State, by H. H. Crumlish for the use of J. T. Griffith against the Central Improvement Company and the Shenandoah Railroad Company, to attach and subject to the plaintiff's debt of $8,826.93, due to him from the said Central Improvement Company, any debts due to the latter company from the said railroad company. This suit was finally decided in favor of the plaintiff in May, 1880, and was taken to the Court of Appeals of Virginia by the said railroad company where the decree of the circuit court was affirmed, November 16, 1882  The facts and questions adjudicated in this suit appear in the report thereof under the title, *Shenandoah Valley Railroad Company* v. *Griffith,* 76 Va. R. 913.

In the amended bill these further averments, among others, are made : that at the time of the filing of the original bill the said Central Improvement Company was in such a disorganized condition that neither its president nor board of directors would institute suit or take any steps for the recovery of the mortgage-bonds in the original bill mentioned; that at that time there was no officer having authority to institute suit or willing to assume the responsibility of

doing so ; that since the leave was given to file this amended bill, the plaintiff by his counsel had applied to Philip Collins, the last acting president, for such authority and he, in writing declined to act in the matter, stating, that he did not feel that he had the authority now to authorize such suit, because the company had long since (about the year 1874) entirely suspended business, that there had been no meeting of the directory since 1877, that he did not know with certainty who at present constituted the directors, and that he was informed the corporate franchises of the company had been forfeited to the State by proclamation of the governor of Pennsylvania.

It is further averred, that since the filing of the original bill, the plaintiff has learned that the Shenandoah Valley Railroad Company claims to be entitled to the $781,000.00 first mortgage bonds, issued to the Central Improvement Company, by virtue of an alleged agreement had between the two companies on April 29, 1878, which agreement, the plaintiff avers, was not made by any one having the authority to act for the Central Improvement Company, that it was procured by the false and fraudulent representations of the Shenandoah Valley Railroad Company and its officers, and is therefore void, and prays that the said agreement and all acts done under it may be held of no effect, that the said railroad company may be required to re-issue to the Central Improvement Company the $531,000.00 first mortgage bonds to which it is entitled, &c.

If the matters introduced in the amended bill are proper subjects of amendment, then, it will be unnecessary to decide whether or not the demurrer was rightly sustained to the original bill, because in that event our determination of the sufficiency or insufficiency of the bill as amended will dispose of the merits of the controvesy before this Court.   We will therefore first consider whether the matters so introduced were proper subjects of amendment?

The appellee, the Shenandoah Valley Railroad Company, insists that amendments have reference to the time of filing the original bill, and that the defendants can not, by any amendment, be called upon to answer anything which has occurred since that time.   I Bart. Ch'y Pr. 329.   It is there-

fore claimed that those averments of the amended bill, which show that the charter of the Central Improvement Company had been declared forfeited by the governor of Pennsylvania, and that application had been made to the president of the company for authority to institute the suit, being matters which occurred after the filing of the original bill can not be the subjects of amendment.

It is true that technically such matters should be introduced by supplemental bill, and in the English courts such was formerly the practice, though now it is doubtful whether this rule obtains even in those courts. 1 Dan. Ch'y *407. But under the practice in Virginia and in this State, where the tendency is to disregard the mere names of things, and to consider and apply their substance, when it is consistent with the ends of justice, there may be said to be scarcely any distinction between an amended and a supplemental bill, but each will be treated as the other, where to do so will substantially advance the rights of the parties. 1 Bart. Ch'y Pr. 330; *Laidley* v. *Merifield*, 7 Leigh 346; *Sturm* v. *Fleming*, 22 W. Va. 404.

Even under the strict rules of chancery pleading, the plaintiff will in some cases be permitted to introduce, by amendment, matters which have occurred since the date of the filing of the original bill; thus when the plaintiff, at the time of preparing his original bill, has an *in choate* right, which merely requires some formal act to render his title perfect, and such formal act is not completed until afterwards. The case of an executor filing a bill before probate, and afterwards obtaining probate, is an instance of this kind. *Humphreys* v. *Humphreys*, 3 P. Wms. 348; *Bradford* v. *Felder*, 2 McCord. ch. 180; *Butler* v. *Butler*, 4 Litt. 201.

It seems to me plain, that the aforesaid matters, under these authorities, must be considered as proper amendments to the plaintiff's bill, notwithstanding they may be regarded as having occurred after the filing of his original bill. It is equally plain, that the plaintiff could properly and legitimately introduce by his amended bill the matter contained in the averment, that he has learned, since the filing of his original bill, that the Shenandoah Valley Railroad Co. claims title to said $531,000.00 first mortgage bonds under

an alleged agreement dated April 29, 1879, and ask that said agreement may be held void. This matter was pertinent to the subject of the suit and its introduction essential to attain the relief sought by the original bill.

The amendments being thus held proper, the original and amended bills together must be considered as forming but a single bill; and the question then to be decided is, whether or not this bill is sufficient to entitle the plaintiff to relief to any extent?

The appellee, the Shenandoah Valley Railroad Company, insists that the bill is multifarious; that it has two objects, perfectly separate and distinct from each other—the one to compel the appellee to account for and pay over to the Central Improvement Company bonds or debts which it owes; and the other to convene the creditors of the Central Improvement Company, to pay them off, wind up the affairs of the company by dissolving it and distributing its assets among its stockholders.

I am not prepared to say, that even if this were a correct statement of the objects of the bill, it would necesarily be multifarious. But the object is not correctly stated. The principal and substantive object of the bill is to restrain the appellee from disposing of and to compel it to account for certain mortgage-bonds belonging to the Central Improvement Company, which are in imminent danger of being lost to it; and as subsidiary or incident to this primary object the bill asks that said bonds, when brought within the control of the Court, may be duly administered because the corporation to which they belong has been dissolved and passed out of existence. It does not seem to me, therefore, according to any rule of law or equity practice, that this bill can be regarded as multifarious. *Segar* v. *Parrish*, 20 Gratt. 672; *Gaines* v. *Chew*, 2 How. 619; *Shields* v. *Thomas*, 18 How. 259.

It is further contended by the appellee, that the bill is demurrable, because it does not show by its averments that the plaintiff was entitled to sue. It is well settled, that courts of law can only recognize the holder of the legal title to the property and franchises of the corporations, the trustee, the management, the president and board of direct-

ors; and that in such courts the stockholders can not sue. But the rule is different in courts of equity. These courts pay less regard to the mere trustees, the management, and is more concerned as to the rights of the *cestuis que trust*, the beneficiaries, the creditors and stockholders. Within the scope of its charter a majority of the stockholders is supreme, and their acts are binding upon the whole. Redress for an injury to a corporation should be obtained, if possible, through its regularly appointed agents even in courts of equity; and it is only when the corporation is disabled from proceeding on its own behalf in this manner, by reason of the misconduct or failure of its officers and agents to discharge their duties, that the stockholders may themselves proceed in chancery for the protection of their equitable rights. But when it is shown that the directors or managing officers of the corporation have refused to act on its behalf, or are guilty of a wrong which the majority refuse to redress, equity will interfere at the suit of a stockholder. *Moore* v. *Schoppert*, 22 W. Va. 282, 290.

It is a general rule founded on convenience that, in case a trustee represents numerous beneficiaries, no portion of these beneficiaries can apply to a court of equity for the protection of the trust, until the trustee has refused *or neglected* to take the necessary steps to protect it on their behalf. This rule applies with much force to the trust between a corporation and its stockholders. It is therefore ordinarily necessary, before a court of equity can interfere with the management of a corporation at the suit of a stockholder, to show that the directors or managing officers having control of it have refused to act in its behalf. "But a demand upon the proper agents of a corporation, and their refusal to act are material only because they show that the corporation itself is unable to protect the rights of its members; for a corporation has no means of acting except by its agents. And therefore, if it be made to appear in any manner that a corporation can not safely be left to obtain relief through the action of its agents, equity will interfere at the suit of a stockholder, without proof of a demand upon the managing agents and their wrongful refusal or neglect to proceed on behalf of the company." Morawetz on Corp. § § 383, 385, 386.

" Thus, if the agents of a corporation, in whom the authority to direct its litigation is vested, are themselves guilty of a wrong against the corporation, a court of equity will interfere at the suit of a stockholder to protect his interest in the corporation without requiring him first to request the guilty agents to proceed in the name of the corporation themselves. For a demand would ordinarily be nugatory under these circumstances; and it would be wholly contrary to established principles of justice to permit the authors of a wrong to conduct a litigation against themselves, as agents of the injured complainant." *Id.* § 386 ; *Peabody* v. *Flint,* 6 Allen 52 ; *Brewer* v. *Boston Transportation Co.,* 104 Mass. 378, 387 ; *Robinson* v. *Smith,* 3 Paige 122.

The foregoing authorities have reference more especially to corporations which are in the active exercise of their corporate powers, or such as have become insolvent but still exist and continue under the management of officers and agents who are exercising control over their affairs. When, however, it is shown that the corporation has ceased to exist either in law or in fact, or that it has abandoned its corporate business and neglected to maintain its corporate existence by the election of directors or the appointment of officers or agents to manage its affairs, it is clear both upon principle and reason, that nothing more can be required of a stockholder, in order to entitle him to sue for the protection of his rights in such corporation, than that he should show the condition of such corporation and its management. This rule was applied in *Finney* v. *Bennett,* 27 Gratt. 365. The special grounds on which the bill was maintained in that suit were, that the corporation—a bank—had been broken up and destroyed by the war, since which time it had not been engaged in business, nor had there been any election of officers, nor any meeting of the board of directors since 1865 ; that by the mutual consent and general understanding of all parties interested, the corporation had been abandoned, and, in fact, ceased to exist. Upon these facts the court held, that it was a proper case for a creditors' suit ; that it showed a trust-fund without a trustee; that it was a case which called loudly for equitable relief—"the institution of a suit by some one on behalf of himself and all other

creditors, the appointment of a receiver, and the collection of the assets and distribution of them ratably among all the creditors." 27 Gratt. 380. It does not, it seems to me, affect the principles involved, that this was a suit by a creditor and not by a stockholder; for, whatever may be the position of stockholders of a corporation during its life and the active conduct of its corporate business, it can not be questioned, that after it has ceased to exist or has abandoned its business and its corporate duties, its assets became a trust-fund for the benefit of its creditors and stockholders. Its creditors are to be first paid, and the residue of its assets, if any, are to be paid to its stockholders. In such case, therefore, the stockholders are simply deferred creditors of the corporation, and as such they have the same right to sue for the protection of their rights, if the bill shows that they probably have such, in the corporation as any other creditor.

In the light of these principles and authorities, I think the facts alleged in the bill show that the plaintiff had a clear right to bring this suit. The bill alleges that the Central Improvement Company had suspended work in September, 1873; that no meeting of the stockholders had taken place since August, 1874, and that no meeting of the directors had been held since January, 1877; that application had been made to the last acting president for authority to sue and he declined to sue or give such authority, because the franchises of the company had been forfeited; that at the time the suit was commenced the corporation was in such a disorganized condition that neither its president nor its board of directors would institute suit or take steps for the recovery of its property; that since the suit was commenced and before the filing of the amended bill the corporation had been dissolved under the laws of Pennsylvania; and that there were then no officers or directors of the corporation to bring or authorize a suit. I think these as well as other facts stated in the bill show a plain right, under the strictest application of the rules in such cases, for the institution of this suit. They also show that this suit was proper and authorized by our statute, which provides: "When a corporation expires or is dissolved, or before its expiration or dissolution, such court as is mentioned in the preceding section may, on application of

a creditor *or stockholder*, sufficient cause being shown therefor, * * * take charge of and administer its assets." Sec. 58, ch. 53 Code. Sufficient cause has certainly been shown for the application made by the plaintiff, as a stockholder in this case.

The next ground on which the appellee insists that the bill is demurrable is, that its object being to wind up and administer the assets of a foreign corporation, and it appearing that the court is not able to make an effective decree, the bill was properly dismissed. This as we have seen does not rightly state the object of the bill; consequently the elaborate argument of the appellee's counsel based on this erroneous assumption of the object of the bill and the many authorities cited in support of it, have very inconsiderable bearing upon the question actually presented. The real object of the bill, as before stated, is to prevent the Shenandoah Valley Railroad Company, a domestic corporation having property in the county of Jefferson in this State, from disposing of and to compel it to account for the assets—the only assets—belonging to the Central Improvement Company, a foreign corporation which has not only ceased long since to carry on its corporate business, but which has been actually dissolved and its charter declared forfeited under the laws of the State of Pennsylvania from which it derived its existence. The taking charge of and administering said assets when thus brought under the control of the court, which the appellee has assumed to be the object of the bill, is simply a consequence or legitimate result of the real object of the suit. It is apparent therefore that the decision of this Court in *Nimick* v. *Iron Works*, 25 W. Va. 184, so much relied on by the appellee, has but little application. In that case a suit was brought by a creditor of an insolvent Ohio corporation against a part of its stockholders in this State to make them personally responsible for the debts of the corporation to an amount not exceeding the stock held by them. This Court held that this liability was not a primary resource for the payment of the debts of the corporation, but collateral and conditional, and to be resorted to by the creditors only in the event and to the extent that the assets of the corporation, when first applied, should prove inadequate to pay the debts;

and even in that case the liability must be enforced ratably against all the stockholders of the corporation. Inasmuch therefore as it was essential to the ascertainment of the liability of the defendant stockholders in that case, that the court should have jurisdiction over the foreign corporation and all of its assets as well as all of its stockholders, this Court held that the suit could not be maintained against the resident stockholders. The other cases cited by the appellee in this connection are to the same effect. The case now before us is very different. Here the liability of the resident defendant, the Shenandoah Valley Railroad Company, is primary, absolute and unconditional. It in no manner depends upon the responsibility or the irresponsibitity of the Central Improvement Company. It rests upon no condition precedent or subsequent, and exists and can be enforced without reference to the condition or assets of the Central Improvement Company outside of this State. The relief sought here is against the appellee, a domestic corporation. The Central Improvement Company, the foreign corporation, is before the Court in effect as plaintiff. The suit is by one of the stockholders and on behalf of all of them as plaintiffs. The bill avers that the corporation has been dissolved, its charter forfeited and all of its assets sold except those sought to be secured and administered in this suit. According to the facts thus stated in the bill, facts which are by the demurrer admitted to be true, I can see no necessity or propriety for making this extinct corporation, this non-existent nonentity, a party defendant at all. In *Steenrod* v. *Railroad Co.* the bill averred that the corporation there in question had "passed out of existence;" and on demurrer to this bill because said nonexistent corporation had not been made a party defendant, this Court overruled the demurrer and said: "These averments show not only the uselessness but the impossibility of making said company a party." 27 W. Va. 10.

It is not denied that a corporation, like an individual, can not be bound personally, unless it appears or is by proper summons within its jurisdiction, brought before the court; but it cannot be questioned, that a court may, without personal service, take jurisdiction of the property of a non-res-

dent person or foreign corporation, and its decree to the extent that it takes possession and disposes of the property within its jurisdiction will be binding upon all parties affected or interested whether residsnt or non-resident. *Public Works* v. *Columbia College*, 17 Wall. 521; *Pennoyer* v. *Neff*, 95 U. S. 714; *Hall* v. *Hall*, 12 W. Va. 1.

In the case before us the property or assets sought to be recovered and administered are in the hands of the appelle, a demestic corporation, which has been duly served with process within the jurisdiction of the court, and it has likewise appeared and is therefore under the complete control and jurisdiction of the court. It is the only party against which any relief is sought; and as that relief is not dependent in any manner upon any condition, or relation involving parties not pefore the court, I am of opinion that the facts alleged in the bill, if true, entitle the plaintiff to the relief prayed.

It is furthe insisted that the demurrer was rightly sustoined, because the averments of the bill show that the laches and acquiescence of the plainliff and all the other stockholders of the Central Improvement Company has been such as to estop them from asserting the claim alleged in the bill. It is a well sottled rule of equity practice, that the statute of limitations, or objections analagous to it, upon the ground of laches, may be taken advantage of by way of demurrer. 1 Dan. Ch'y Pr. 559 § 9; *Jackson* v. *Hull*, 21 W. Va. 601. It is therefore clear, that this defence, if it exists, may be taken advantage of by demurrer.

In *Cranmer* v. *McSwords*, 24 W. Va. 595, this Court held, that in defences, founded on laches and lapse of time, the important considerations generally are: *First*, The death of the parties to the transactions to be investigated, or the intervention of the rights of third parties; *second*, The loss of evidence where the transactions are complicated; and, *third*, the character of the evidence by which it is sought to establish the plaintiff's demand—if imdortant *facts* are to be proved by parol testimony, this would be a consideration of great weight, but if by documentary proofs, of very little weight.

Applying these rules to the case at bar, it is plain this ground of demurrer is not well taken. According to the al-

legations of the bill, the Central Improvement Company itself and *a fortiori* the plaintiff was not called upon to institute any suit of this character, that is, a suit to prevent the Shenandoah Valley Railroad Co. from improperly bancelling, transferring or disposing of the mortgage bonds in the bill mentioned, and wrongfully releasing the mortgage by which said bonds are recured, until some such improper or wrongful act had been done or threatened by said railroad company, and the Central Improvement Company or its stockholders had notice of it. It does not appear from the allegations of the bill that any such act was done or threatened until March or April, 1879, or that plaintiff had any notice of it until July, 1879, when certain depositions were taken in the "Griffith suit." The bill does not show that between that time and December, 1882, the date of the filing of the bill in this cause, any of the parties have died, or that the rights of any third persons have intervered. Nor is there any averment even tending to show that there is any loss of evidence or that any fact to be established is dependent in whole or in part on parol testimony. On the contrary it appears that many, if not all, of the facts on which the plaintiff seeks to obtain relief are susceptible of proof by written evidence. Therefore taking the allegations of the bill as true, as we must do upon the questions now before us, I can discover no ground for the application of the doctrine of laches to this cause. The suit was commenced within less than four years from the time the alleged cause of action arose; as no grounds are stated showing that the rights of any of the parties have been predjudiced by the delay during the intervening time, there was clearly no such lapse of time or acquiescence as will bar the plaintiff's right to relief.

Upon the whole cause, I am for the reasons stated, of opinion, that the decree of the circuit court of March 1, 1886, sustaining the demurrer and dismissing the plaintiff's bill, was erroneous and must therefore be reversed; and that the demurrer be overruled and the cause remanded to said court in order that a rule may be given the defendant to answer, and for further proceedings there to be had.

REVERRED. REMANDED.