Rockingham, }
Nov. 3, 1903. }

KIDD & a. v. NEW HAMPSHIRE TRACTION CO. & a.

The validity of a plea in equity is properly determinable upon a motion to set it aside, and not upon demurrer thereto.

Where a bill in equity against several defendants sufficiently charges fraud in which all of them actively participated, a plea averring that no service of process has been made upon certain defendants, who are alleged to be indispensable to the maintenance of the suit, is no bar to the prosecution of the proceeding against the pleader, over whom the court has acquired jurisdiction.

The courts of this state have jurisdiction over property located here and owned by a non-resident; and their adjudication as to the relative rights of parties claiming such property, the statutory notice having been given, is binding upon the owner, although he is not served with process within this state.

If a domestic corporation wrongfully obtains possession of the property of a foreign corporation and subsequently transfers it to a non-resident in furtherance of a scheme of fraud, the right of action of the owners to recover damages therefor is property within this jurisdiction.

Stockholders of a foreign corporation whose .franchise has been practically abandoned by those possessing control over it may maintain an action in the courts of this state for the recovery of property of the corporation found within this jurisdiction.

BILL IN EQUITY, by certain shareholders of the Massachusetts Construction Company Incorporated (a Connecticut corporation), against that company, the New York Security and Trust Company (a New York corporation), Wallace D. Lovell (a resident of Massachusetts), and. the New Hampshire Traction Company (a New Hampshire corporation located at Hampton in Rockingham county).

, The bill alleges, in substance, that in pursuance of an agreement entered into November 12, 1901, the defendants, on December 2, 1901, caused to be transferred to the Traction Company certain assets of the Construction Company, the purpose of the transaction being to fraudulently deprive the plaintiffs of the value of their shares, and that said assets were thereafter acquired by the Trust Company for an insufficient consideration, in furtherance of the fraudulent intent; that in pursuance of a contract entered into December 28, 1901, the defendants caused the remaining assets of the Construction Company to be transferred to the Trust Company, in fraud of the plaintiffs' rights as shareholders of the former corporation.

The interests of the other defendants in the Traction Company, and the money and property of all the defendants in the hands of the Rockingham County .Light and Power Company, a New Hampshire corporation, were attached upon a writ in aid of the bill in equity. Service was duly made within this state upon Lovell, the Traction Company, and sundry persons alleged to be the agents of the Construction Company and the Trust Company, and the requisite copies were delivered to officers of the two last named corporations in Hartford, Connecticut, and New York city, respectively, in accordance with orders of the superior court.

Lovell appeared and answered. The bill was taken *pro confesso* as to the Construction Company and the Trust Company. The Traction Company filed a plea alleging that the Construction Company and the Trust Company were indispensable parties to the suit, and averring that no sufficient service had been made upon either of them. The plaintiffs' demurrer to the plea was sustained by *Young*, J., at the January term, 1903, of the supe-

rior court; and the Traction Company, being ordered to demur or answer, excepted.

*Roger F. Sturgis* (of Massachusetts) and *Streeter & Hollis* (*Mr. Sturgis* and *Mr. Streeter* orally), for the plaintiffs.

*Brown, Jones & Warren*, for Lovell.

*John L. Thorndike* (of Massachusetts), *Samuel W. Emery*, and *Harry G. Sargent* (*Mr. Thorndike* and *Mr. Emery* orally), for the New Hampshire Traction Company. It is assumed for the purposes of the plea, though it is not admitted for any other purpose, that the bill alleges facts that in some way would make the contracts fraudulent as against the Construction Company, so that they would be void at its election, and that the bill also shows sufficient grounds for a suit by the plaintiffs on behalf of all the shareholders to assert the rights of the company. The objection raised by the plea is that the relief sought by the bill requires that the Massachusetts Construction Company and the New York Security and Trust Company should be personally bound by the decree, and cannot be given by a payment of money to be obtained from property attached; that they cannot be so bound because they have not been served with process within the jurisdiction; and if relief could be given by means of property attached, that there has been no attachment.

1. As regards the first transaction, the contract of December 2, 1901, the Massachusetts Construction Company is an indispensable party, because the object of the suit is to enforce a right belonging to that company, and this cannot be done in its absence. A suit by shareholders to enforce rights of a corporation cannot be maintained without making the corporation a party, for the corporation would not be concluded by the decree and it would be impossible to give relief without affecting the corporation. *Davenport* v. *Dows*, 18 Wall. 626; *March* v. *Railroad*, 40 N. H. 548, 568, 569.

It is the established practice of courts of equity to dismiss the bill if the relief prayed for would injuriously affect persons materially in the subject-matter who are not made parties; and the court will do this *sua sponte*, although the objection may not be raised by the parties. *Minnesota* v. *Securities Co.*, 184 U. S. 199, 235. Even the United States statute of 1839 (R. S., s. 737), which provides that when one or more of the defendants are not found within the jurisdiction the court may entertain jurisdiction and proceed to the adjudication of the suit between the parties properly before it, does not displace this rule, which is founded on

the principle that no court can adjudicate directly upon a person's right without the party being actually or constructively before the court. *Minnesota* v. *Securities Co.*, *supra*, 236, 237. On this principle it was held in *Shields* v. *Barrow*, 17 How. 130, 139, 140, that a bill to set aside and annul a contract could not be maintained unless all the parties to the contract were before the court.

In the present case the plaintiffs pray that a contract between the Massachusetts Construction Company and the New Hampshire Traction Company may be set aside, although only one of those parties is before the court.

In *Samuel* v. *Holladay*, Woolw. 400, a suit was brought by shareholders in an express company to set aside a transfer of property. The Express Company was named as a defendant, but was not served with process and did not appear. *Miller*, J., said (*p.* 414): " But this indispensable party is not before us. It is named in the bill as a defendant, but it has not been served with process nor appeared to the suit. I have before me now two subpœnas in chancery, issued at different times, both of which the marshal was directed to serve upon the company, but to each of them he returns that that defendant is not found in his district. It is not a party to, and cannot be affected by, the decree, whatever its terms, which we may render. Were we to-day to render a decree according to the prayer of the bill, or according to the modified relief now sought, it could to-morrow bring and maintain its bill against the same defendants, complaining of the same injuries, and seeking the same remedies; and yet our determination afford them no protection to the second inquiry into their conduct. It needs no words to explain that this cannot be."

The present case stands in the same position; and whatever decree might be made, the Construction Company would not be bound by it in any way. Notwithstanding a decree in this case setting aside and annulling the transaction in favor of the plaintiffs, or deciding in favor of this defendant, the Construction Company could still bring another suit to set aside the transaction, or might treat it as valid and bring an action for any fraud that might have been practised. *Cain* v. *Dickenson*, 60 N. H. 371; Kerr on Fraud (3d ed.) 352.

2. Another result from not having the Construction Company before the court is, that if a decree should be made setting aside the transaction and directing a transfer of the property back to the Construction Company as prayed, the decree would not bind that company to receive it and could not be enforced. It was on this ground that a bill for specific performance against a person who had agreed to purchase land in Massachusetts, but had not

been served with process within the jurisdiction, was dismissed in *Merrill* v. *Beckwith*, 163 Mass. 503. The vendor, who was plaintiff, was ready to execute the conveyance, and the purchaser's property in the state had been attached to a value far beyond the purchase money; but the bill was dismissed because the purchaser would not have been bound by the decree and could not be compelled to accept the conveyance.

The prayer of the bill is that the property may be transferred to the Construction Company, or, in the case of any part disposed of to *bona fide* purchasers, the value may be paid to that company; or, as the Construction Company "is controlled by the conspirators, the other defendants, that the rights of the plaintiffs, the preferred shareholders therein, may be adjudicated, and that the defendants be ordered to satisfy the plaintiffs' just claims as thus determined."

The plaintiffs have no rights or claims except to have the property retransferred to the company if the company is entitled to it, and there is no other intimation in the bill that they have any other rights or claims. In *DeNeufville* v. *Railway*, 81 Fed. Rep. 10, the court say: "The pleader, it is true, uses language which seems to imply that he considers this a cause of action in favor of the complainant individually. . . . But manifestly this is a mistaken conception of the case made by the bill. The property . . . is not, and never was, complainant's property. The acts of the conspirators of which he complains have not deprived him of any of his property. It is the property of the corporation which has been taken, and it is the corporation which is entitled to its return, or to an accounting for its proceeds." See, also, *Davenport* v. *Dows*, 18 Wall. 626, 627.

The suit purports to be brought on behalf of the Construction Company, to assert what is alleged to be a right of that corporation; and the corporation's right to whatever may be recovered is the same as if it were the plaintiff. *Arapahoe County* v. *Railway*, 4 Dill. 277, 284, 285. The plaintiffs can have no right, on account of any supposed wrongful acts, to have the property of the corporation given to them. They cannot insist on having the business closed and its assets distributed because its affairs have not been properly conducted; and if they could do so, it would still be necessary to have the corporation before the court. *Denike* v. *Lime Co.*, 80 N. Y. 599, 605, 606; Mor. Corp., *s.* 283.

Each of the two points that have been mentioned would be conclusive against any claim that the plaintiffs might allege on behalf of the Construction Company, whether the claim was for a rescission of the contract or for damages for anything done in obtaining it.

3. But the relief prayed by the plaintiffs requires that the Construction Company should be before the court in order that, if the contract is set aside and the Traction Company is decreed to transfer to it the property it received, the Construction Company may be compelled on its part to restore what it received under the contract from the Traction Company. By the contract, the Construction Company, in exchange for the shares and bonds transferred to the Traction Company, received from it other shares and bonds. The contract cannot be rescinded in favor of the Construction Company except on condition that the shares and bonds so received are restored to the Traction Company. *Evans* v. *Gale*, 17 N. H. 573, 575, 576; *Bassett* v. *Brown*, 105 Mass. 551, 558; *Clarke* v. *Dickson*, E. B. & E. 148; *New Sombrero Phosphate Co.* v. *Erlanger*, 5 Ch. D. 73; *Lee* v. *Railway*, L. R. 6 Ch. 527; Kerr on Fraud (3d ed.) 338, 339; Seton Judg. (6th ed.) 2318, 2329. It is therefore necessary that the Construction Company should be before the court, in order that it may be decreed to restore what it received.

It appears, however, from the bill that the Construction Company no longer has the shares and bonds that it would be required to restore, but transferred them to the Trust Company in pursuance of the contract of December 28, 1901. Accordingly, the Construction Company is not in a position to restore them, and rescission cannot be decreed in its favor, unless the Trust Company can be obliged to return the shares and bonds. In order to do this, it is necessary that the Trust Company should also be before the court. The Traction Company would be entitled, upon a rescission, to have its property restored to it, and could not be obliged to accept its estimated value in money in place of it, even if there were any means of enforcing a payment of money. *Handforth* v. *Jackson*, 150 Mass. 149, 154.

4. Everything that has been said upon the question of giving relief as regards the transaction of December 2, 1901, is equally applicable in the case of the transaction of December 28, 1901. In the latter case it is to be added that the transaction was one between the Construction Company and the Trust Company, neither of which is before the court, and the Traction Company was not a party to it. As regards the former transaction, the plaintiffs are seeking to have it set aside with only one of the parties before the court; but as regards the latter, they are seeking the same relief without having either party before the court, though they have named both of them as defendants. The Traction Company had nothing to do with this transaction, and did not afterward receive any of the property transferred or acquire control over it; and even if the Construction Company were

before the court, no relief could be had against the Traction Company on account of the transaction.

5. There was no service of process within the jurisdiction upon either the Construction Company or the Trust Company. The sheriff returned the writ *non est inventus* as to both of these corporations. The plaintiffs served somewhere a supplemental order on the defendant Lovell " in his capacity as agent" of each of them, and at Hartford, Connecticut, on an officer of the Construction Company, and at New York city on an officer of the Trust Company; and the sheriff served a second supplemental order on J. D. E. Duncan, as agent of each of those two companies. There was no evidence that either Lovell or Duncan was agent of either of the companies for any purpose, and the sheriff's return that he served on Duncan as agent is not even a statement that he was in fact agent. *Kimball* v. *Sweet*, 168 Mass. 105. If the sheriff had returned that he was agent, it would have been open to contradiction (*Mexican Central R'y* v. *Pinkney*, 149 U. S. 192, 202; *In re Hohorst*, 150 U.S. 653, 663); and the plea alleges that neither company had any agent in the state. As there was no service within the jurisdiction, the court could not pronounce any decree that would be personally binding upon either of the two companies. *Downer* v. *Shaw*, 22 N. H. 277; *Eliot* v. *McCormick*, 144 Mass. 10; *Insurance Co.* v. *Bangs*, 103 U. S. 435; *Goldey* v. *Morning News*, 156 U. S. 518, 521.

It is not material whether there was any attachment of property or not, for no attachment would enable the court to make a decree binding either of them personally; but if any relief could be given by means of an attachment of property, it would appear that nothing has been attached. The officer's return shows what purports to be an attachment of the stock and interests of the other defendants in the Traction Company, and of the money, goods, chattels, rights, and credits of all the defendants in the hands of the Rockingham County Light & Power Company as trustee; but it does not appear that there was any such stock or interest, or any such money, etc., and the plea denies that either of the foreign corporations had any such.

PARSONS, C. J. The proceeding is a bill in equity by two shareholders in the Massachusetts Construction Company Incorporated, a Connecticut corporation, brought in behalf of all the shareholders, and charging that through the fraud of the defendants all of the assets of the corporation have been transferred to and are now held by one of the defendants, and that the purpose of the transaction was fraudulently to deprive the plaintiffs of the value of their shares. The following facts appear from the alle-

gations of the bill: The capital stock of the plaintiffs' corporation consists of 5,000 shares of $100 each, par value. Twenty-five hundred shares of this capital are preferred both as to capital and income, but have no voting power, such power being vested exclusively in the remaining shares, called common stock. At the time of the transactions in question the assets of the corporation were worth, in addition to the amount necessary to satisfy the existing indebtedness of the corporation, more than $500,000, the amount of the whole capital stock. The plaintiffs then owned and now own 2,440 shares of the preferred stock. The parties charged with the fraud are the defendant Lovell (then and now the owner of all the common stock, and now owning all the preferred stock not held by the plaintiffs), the New York Security and Trust Company, a New York corporation, and the New Hampshire Traction Company, a New Hampshire corporation. The corporation in which the plaintiffs are stockholders is also made defendant. Lovell has appeared and answered to the bill. The plaintiffs claim to have made service upon the Construction Company and the Trust Company, and the bill has been taken *pro confesso* as to them. The Traction Company has filed a plea alleging that the Construction Company and the Trust Company are indispensable parties to the suit, averring that they are not within the jurisdiction and that no sufficient service has been made upon them, and traversing the material facts set out in the several returns of service.

The practice in equity upon plea filed and the essentials of a valid plea are set forth by Chief Justice *Bell* in *Bassett* v. *Company*, 43 N. H. 249. The proceedings in the superior court are hardly in accord with equity practice as there explained. The plaintiffs demurred to the plea, and the demurrer was sustained. Judge *Bell* says (*p. 253*): "In equity, there is no demurrer to a plea, and no other step can be taken until it is disposed of. . . . To obtain a decision upon the validity of a plea, the course is to set it down for argument, which has much the effect of a demurrer at law, being an admission that the facts stated in the plea are true as they are pleaded, and it is submitted to the court to decide whether they constitute a bar. . . . If the plea wants form, as if it is not verified by oath, the plaintiff must move to set it aside, or take it off the files. He cannot make the objection on the argument." If the demurrer to the plea can properly be treated as a motion to set it aside, the motion must be granted' because the plea is not verified by affidavit. *Bassett* v. *Company*, 43 N. H. 249. This objection has not been taken and possibly can be avoided by amendment. Since the purpose of the demurrer was undoubtedly to obtain a decision upon the validity of the plea,

the proceedings in the superior court may properly be considered as amounting in substance to the overruling of the plea when set down for argument.

"In pleas in equity, there must in general be the same strictness and exactness as in pleas at law, at least in regard to matters of substance. . . . The plea must not be argumentative. . . . The language must be such as to include all intendments. And if a case can be supposed, consistent with the facts pleaded, which would render the plea inoperative as a full defence, and which is not excluded by particular averments, the plea is bad." *Bassett* v. *Company*, 43 N. H, 249, 252. "Where the plaintiff's right to the relief or discovery he seeks depends on a single point, the defendant, instead of answering all the allegations of the bill, may insist on the fact which he relies on as a bar, or deny some fact alleged in the bill, which is essential to the maintenance of the plaintiff's claim. He may thus narrow the investigation and save the expense of evidence, as to all the other matters made material by the bill, or which might be made so by the answer." *Bell* v. *Woodward*, 42 N. H. 181, 191.

The objection raised by the plea is the want of parties. The question therefore is: If no sufficient service appears, whether either of the parties to whom the plea relates is indispensable to the maintenance of the suit, so that in their absence beyond the jurisdiction of the court no relief can be given the plaintiffs. "A plea to the whole bill of want of parties will be overruled if in any one state of facts charged by the bill the parties would not be necessary; for then the plea is not an answer to all the allegations in the bill." Sto. Eq. Pl., s. 745. Upon the argument of a plea, every fact stated in the bill and not denied by the answer in support of the plea must be taken to be true; and the answer must be full and clear, or the court will intend the matter against the pleader. Sto. Eq. Pl., ss. 511, 516, 527; *Bell* v. *Woodward*, 42 N. H. 181, 194. There is no answer in support of the plea, and no denial by averments in the plea of any facts charged in the bill; but the averments are directed to the facts set out in the returns of service, and relate, as the defendants claim, to the date of the service and not to the date of the filing of the bill. The plaintiffs attempted in various ways to secure service upon each of the defendants. Whether this service is sufficient to render the Trust Company amenable to the jurisdiction in this suit, is a question which it is not now necessary to examine. Neither is it necessary to consider whether the facts upon which the plaintiffs rely to sustain the service are sufficiently denied by the allegations of the plea. The sole question is whether the plea is a bar to the further maintenance of the bill against the pleader, the Traction

Company. The case is not here on demurrer to the bill, and therefore no question is before the court as to the sufficiency of the allegations to charge fraud or to establish the plaintiffs' right to maintain the suit. The defendants so concede in their first brief. If, then, it be assumed without examination that the averments of the plea are sufficient to establish for the present purpose that no jurisdiction has been acquired over the New York Security and Trust Company by the various forms of service which appear in the record, the only question is whether the want of such jurisdiction is a bar to the maintenance of the suit against the pleader over whom the court has jurisdiction. It is not, upon the authorities cited, if under any supposable case provable under the bill the plaintiffs may be entitled to a decree against the Traction Company alone. The charge of the bill is, that by the fraudulent coöperation of all the defendants, through two contracts alleged in the bill, dated November 12, 1901, and December 28, 1901, all the assets of the Construction Company, amounting above their indebtedness to more in value than the total capital stock, were taken from that company and transferred to the defendant Traction Company, and are now held by it. It is alleged that the Traction Company not only received the property with knowledge of the fraud, but were active participants in the fraud and have largely benefited thereby. The facts relied upon as constituting fraud are fully set out in the bill and are of considerable complication. It is unnecessary to refer to them in detail, as it is conceded by the defendants that upon the question of the validity of the plea the bill must be taken to sufficiently charge fraud. It is to be understood that the admission of the charges of the bill is purely formal. They may fail entirely of proof, but as the case now stands the acts in which the defendants have joined to the injury of the plaintiffs must be taken to have been tortious.

When the acts complained of are tortious, the cause of action is several as well as joint, in equity as well as at law, and the absence of one tort-feasor will not prevent the interference of the court. Sto. Eq. Pl., *s.* 213; *Bassett* v. *Company*, 43 N. H. 249, 252; *Cunningham* v. *Pell*, 5 Paige 607; *Ervin* v. *Company*, 20 Fed. Rep. 577, 582; *Wilkinson* v. *Parry*, 4 Russ. 272, note. The theory of the plaintiffs' bill is that the managing stockholders and directors of their corporation, holding the legal title as trustees, have fraudulently with the fraudulent connivance of the other defendants transferred to the Traction Company the property in which the plaintiffs have an equitable interest. The redress afforded the *cestui que trust* in such case is either rescission or account, according to the circumstances of the case. Bisp. Eq., *s.* 239; *Ervin* v. *Company*, and authorities *supra*. If the defend-

ants have so arranged matters that the plaintiffs cannot have a rescission of the contracts set out and a return of the property, that fact would not defeat the claim for damages against the authors of the wrong.   It may be under the allegations of the bill that this is the only remedy.   Such damages are recoverable from any one of the wrongdoers.   As under the allegations of the bill a case may be made upon which the plaintiffs would be entitled to a decree against the Traction Company without joining the New York Security and Trust Company, the plea in so far as it relates to that company was properly overruled.

The plaintiffs sue as shareholders in the Massachusetts Construction Company Incorporated, a foreign corporation, which upon the averments of the plea has not been served with process within this jurisdiction.   It is named as a defendant in the bill, and service has been made upon it as a non-resident defendant. P. S., c. 219, s. 9.   There is no averment that the person upon whom service was made in Connecticut did not represent the corporation.

While the courts of a state have no jurisdiction to render a personal judgment against a non-resident individual or corporation not served with process within the state, their adjudication as to all property within the state is final and conclusive upon non-residents as well as residents, upon such notice as the statutes of the state require.   *Downer* v. *Shaw*, 22 N. H. 277, 280; *Eastman* v. *Dearborn*, 63 N. H. 364; *Bancroft* v. *Conant*, 64 N. H. 151; *Minot* v. *Tilton*, 64 N. H. 371, 374; *Pennoyer* v. *Neff*, 95 U. S. 714.   This power of disposition over the property of a non-resident is not limited to the seizure of the property of a non-resident defendant upon mesne process or execution.   " By virtue of its jurisdiction over property of non-residents within its limits, the state through its tribunals may inquire into the non-resident's obligations to its own citizens to the extent of controlling the disposition of the property if necessary, the action being in the nature of a proceeding *in rem* when there is no appearance and no service of process on the non-resident."   *Minot* v. *Tilton*, *supra*, 374. Under the fourteenth amendment to the federal constitution, the plaintiff Whitcomb, a citizen of Massachusetts, is entitled to all the rights the law gives our citizens.   *Sturtevant* v. *Company*, 66 N. H. 557.

*Bancroft* v. *Conant*, 64 N. H. 151, was a bill to remove a cloud upon the title to real estate in this state.   Service was made upon the defendants, residents of Massachusetts, in the manner adopted here—by the delivery of an attested copy to them without the jurisdiction.   The defendants appeared specially and moved to dismiss for want of service, but the service was held sufficient.

*Minot* v. *Tilton*, 64 N. H. 371, was a bill in equity to reform a declaration of trust. The beneficiary immediately interested in one particular of the reformation asked was a non-resident. Notice was by publication. There was no appearance for her, and it did not appear that she had received actual notice. The court said on this point (*p.* 374) : "The trust fund, the trustee, and all the other beneficiaries being within the jurisdiction, and the statutory notice having been given, the court has jurisdiction over the property to the extent of determining the relative rights of the parties to it, and to that extent the decree will be binding upon her."

In the present case, the beneficiaries are before the court; and if the fund is here, the non-appearance of the trustee will not defeat jurisdiction over a fund found here. If any property of the Massachusetts Construction Company Incorporated, therefore, is within this state, the courts of this state have jurisdiction over it; and their determination as to the relative rights of the parties claiming it, the statutory notice having been given, will be binding upon non-residents, although not personally served with process within the jurisdiction.

The assets of the plaintiffs' corporation consisted of stock and bonds of sundry electric railways, with two exceptions located in and incorporated by this state, called the Exeter, Hampton, and Amesbury system, and of stock and bonds of other New Hampshire corporations called the Southern New Hampshire system. These properties, it is alleged, were transferred to and are now held by the pleader, the Traction Company. Upon these allegations, which are not denied, the property in question is beyond dispute in this state and within the jurisdiction of this court. The question is whether as against the plaintiffs' corporation the defendant Traction Company has acquired a valid title by the transactions set out in the pleadings. But it is further alleged that the Traction Company has pledged all the securities representing property in this state to the New York Security and Trust Company, a New York corporation, as security for certain issues of stock and bonds. Upon this allegation it is argued that it should be inferred that the paper evidences of title—the bonds and certificates of stock—are in New York, the home of the Trust Company. This is nowhere directly alleged in the pleadings upon either side ; but conceding the inference to be correct, the situation is not altered so far as the jurisdiction of the courts of this state is concerned. The inference, if made, merely introduces other non-resident claimants to the corporate property which is in this state. It is nowhere alleged that the Traction Company have parted with their title, such as they may have, except by way of pledge or mortgage. If the pledge is valid against the corpora-

tion in whose right the plaintiffs sue, the equity held by the Traction Company, of whatever value it may be, is still open to adjudication between that company and the original corporate owners.

But assuming that the defendants have placed the actual property beyond the reach of the plaintiffs in this suit, it does not follow that there is no property of the corporation in this jurisdiction. The plaintiffs allege that the Traction Company has by fraud obtained possession of all the assets of their corporation, and claim to recover damages for the fraud by which, as they allege, their corporation has been despoiled of all its property and their shares rendered valueless. The defendants object that this right of action (*Cain* v. *Dickenson*, 60 N. H. 371) is a right of the corporation, and that a judgment in this suit, if the corporation is not a party, would not be binding upon the corporation, and they, the pleaders, might be subjected to another suit at the hands of the corporation. Such right of action of the corporation against the pleader, a domestic corporation which has been duly served with process and appeared in the suit, is property within the jurisdiction of this state. *Thompson* v. *Wilson*, 2 N. H. 291, 292; *Stearns* v. *Wright*, 51 N. H. 600, 611; *Leonard* v. *Putnam*, 51 N. H. 247, 251; *Pinney* v. *McGregory*, 102 Mass. 186; *Redmond* v. *Hoge*, 3 Hun 171; *Crumlish* v. *Railroad*, 28 W. Va. 623; *Robinson* v. *Epping*, 24 Fla. 237, 261; *Wyman* v. *Halstead*, 109 U. S. 654, 656. "The right to an action for an injury to the property of the judgment debtor, before the filing of the complainant's bill, whereby the property to which the creditor was entitled to resort for the payment of his debt is destroyed or diminished in value, appears to be such a thing in action as may properly be reached and applied to the payment of the complainant's debt, under a creditor's bill." *Hudson* v. *Plets*, 11 Paige 180, 183, 184.

The substance of the allegations of the bill is that the property of the corporation which it held in addition to the amount necessary to pay its debts was fraudulently taken from it without consideration. If the property cannot be returned, the liability of the wrongdoers is the value of such property, which the bill alleges to be not less than $500,000. The defendants, the Traction Company, participating in the fraud and receiving the property with full knowledge of the claim against it, hold the property subject thereto; and having in furtherance of the scheme put the property beyond the reach of the corporation, are liable to the extent of the injury. They hold wrongfully either the property or its proceeds. As the plea does not deny the facts upon which the liability depends, the case stands upon the admission of the Traction Company of their liability to the Massachusetts Construction Company Incorporated, in the sum of not less than $500,000. This fund,

admittedly in the hands of a resident of this state, is property within this jurisdiction.

The plaintiffs, bringing their suit as shareholders, can recover only upon a right of the corporation. If by amendment of their bill they could recover of the defendants upon any other ground than the right of the corporation, it would be immaterial whether there had been service upon the corporation or not. In short, if the litigation relates to property of a non-resident corporation in this state, sufficient notice has been given to bind the corporation as to the disposition which may be made of the property. If it is not brought to enforce a corporate right, no notice to the corporation is necessary.

The proposition, that to a shareholders' suit to enforce a corporate right in protection of their equitable interest in the corporate assets the corporation is a necessary party, has been approved and followed in numerous cases. Such corporation is said to be a necessary party because its rights are involved in the litigation which would necessarily be fruitless unless the corporation and the stockholders represented by it, other than the plaintiffs, are bound thereby. *March* v. *Railroad*, 40 N. H. 548, 568; *Davenport* v. *Dows*, 18 Wall. 626; *Bagshaw* v. *Railway*, 7 Hare 114, 131; Cook Stock & Stockh., s. 692. Some text-writers and some cases go farther and hold such corporation to be an indispensable party, "not simply on the general principles of equity pleading, in order that it may be bound by the decree, but in order that the relief when granted may be awarded to it, as a party to the record, by the decree" (3 Pom. Eq. Jur., s. 1095); or, as it is otherwise expressed, because the relief asked for "must be worked out by or through" the corporation. *Black* v. *Huggins*, 2 Tenn. Ch. 780; 1 Mor. Corp., s. 257. If the relief sought requires a personal judgment against the corporation the principle is well stated in this manner, though as thus broadly put it is not sustained by all the authorities. The ground generally stated is the necessity that the corporation should be bound by the judgment.

The earliest case upon the question is *Robinson* v. *Smith*, 3 Paige 222 (1832), in which a demurrer to the bill was sustained because the corporation was not joined as defendant. In the later case of *Cunningham* v. *Pell*, 5 Paige 607 (1836), the same court say: "But it is a fatal objection to all the relief claimed by the bill that the corporation is not made a party. This question was decided in the case of *Robinson* v. *Smith* before referred to. Although that suit was brought by the stockholders, and this by a creditor of the corporation, the principle is the same in both cases. If this creditor could compel the defendants to account to him, . . . the corporation, if in existence, might hereafter compel the defendants to

account a second time to it.   Although the corporation is located in another state, if it does not appear voluntarily it may be proceeded against as an absent defendant."

The cases are numerous in which the general proposition upon which the defendants rely has been approved or followed.   A somewhat extensive examination has failed to discover a case turning upon the precise question here : whether stockholders in a foreign corporation may maintain a suit for property of the corporation found within the jurisdiction, unless the corporation appears or is served with process within the jurisdiction.   In *Samuel* v. *Holladay*, Woolw. 400, 415, there was no service and a return of *non est inventus*.   There appeared reason to believe that the corporation might be served with process, but the case was not continued for that purpose because found unmaintainable on other grounds.   The question of the sufficiency of service upon the corporation as a non-resident to bind it as to property under the control of the court was not raised.   In *Redmond* v. *Hoge*, 3 Hun 171, and *Crumlish* v. *Railroad*, 28 W. Va. 623, the language of the court tends strongly to sustain the position that jurisdiction of the property authorizes the maintenance of the suit.   In the case first referred to the court say (*p.* 176) : "We have jurisdiction of the property because it is within our territory.   . . .   We are not prepared to say   . . .   that this court has not, under such circumstances, power to intervene, so far as relates to the property actually within the state.   The court is not powerless, in such a case, to enforce any judgment it may render, so long as it is limited to the particular fund which it finds here and takes from the hands of persons over whom its jurisdiction is complete and puts it into the safe keeping of its own officers.   . . .   It is idle to answer that the courts of Connecticut have jurisdiction over the corporation ; for such jurisdiction, so far as it affects the questions and remedies here, is futile.   . . .   A receiver, if appointed there, must resort to our courts to reach the appellants and the fund in their hands,   . . .   and become substantially the receiver of this court, in order to acquire possession of the fund. But while no such officer exists in Connecticut, there seems to us no sound reason why the jurisdiction of this court may not be invoked to preserve a fund now in the hands of persons in our jurisdiction, and in danger of being lost by their insolvency or improper use."   And the West Virginia court use the following language (*p.* 636): "It is not denied that a corporation, like an individual, cannot be bound personally, unless it appears or is by proper summons within its jurisdiction brought before the court ; but it cannot be questioned that a court may, without personal service, take jurisdiction of the property of a non-resident person or foreign cor-

poration, and its decree to the extent that it takes possession and disposes of the property within its jurisdiction will be binding upon all parties affected or interested, whether resident or non-resident." The jurisdiction of the courts of a state to seize the property of a non-resident corporation and apply it in satisfaction of the claim of a single creditor, or by proper proceedings distribute it among all the creditors of a foreign corporation, is not open to discussion. As said by the supreme court of the United States in *Blake* v. *McClung*, 172 U. S. 239, 247 : " Beyond question, a state may through judicial proceedings take possession of the assets of an insolvent foreign corporation within its limits, and distribute such assets or their proceeds among creditors according to their respective rights." If the corporation has gone out of existence, no person except the shareholders has any interest in the fund remaining after the creditors are satisfied. " In such case, therefore, the stockholders are simply deferred creditors of the corporation, and as such they have the same right to sue for the protection of their rights, if the bill shows that they probably have such in the corporation, as any other creditor." *Crumlish* v. *Railroad*, 28 W. Va. 623, 634.

The legal title to all the corporate property is in the corporation, which acts only through its officers, who are agents of the corporation—not of the stockholders. The corporation itself is the proper person to bring any proceeding to enforce a corporate right. Shareholders as such have no right to bring suit in behalf of the corporation unless it appears that the corporate officers have been applied to to bring the suit and have refused, or the circumstances are such that such prior application is plainly useless. The suit, therefore, of the stockholders of a foreign corporation, attempting to recover property of the corporation, is necessarily a suit to recover property to which the corporate management make no claim. Such property or the proceeds of the suit having come under the control of the court, the power to protect the interests of corporation creditors being undoubted, if the corporation does not appear to claim the residue such residue would seem to present clearly the case of a fund without a trustee. The case of a going concern, even where upon actual notice the corporate managers refused to take charge of such corporate property, would appear to furnish evidence that as to such property the corporate franchise had been abandoned and authorize the interposition of a court of equity in behalf of those beneficially interested. But that question is not before us, for it is alleged in the amended bill that the purpose with which the assets of the corporation were turned over to the other defendants was practically to wind up the corporation, and that on December 31, 1901, all the business theretofore

done in the name of the Connecticut company was closed up and its career as an apparently going concern definitely and finally terminated, and that it has no creditors.   Although practically abandoned, it is not alleged that the corporation has been dissolved, and it is still in existence as against creditors.   *Parsons* v. *Powder Works,* 48 N. H. 66, 69.   But this would not render impossible the conclusion that the corporate franchise has been so abandoned by those possessing the control over it that the fiction of a corporate entity, as distinguished from the aggregate of individual corporators, all of whom are before the court, cannot be successfully set up to prevent the enforcement by the stockholders of their equitable rights to a fair accounting from those who aided in the fraud by which the corporation was wrecked.   *Ervin* v. *Company,* 20 Fed. Rep. 577.   The case upon these allegations is one of a fund deliberately abandoned by the trustee, and which equity will not allow to be lost for the want of a holder of the legal title.   The argument of the defendants would lead to the proposition that the officers and agents of a foreign corporation doing business in this state and having property here, having attempted to dispose of all the corporate property for the express purpose of depriving the stockholders of the value of their shares and with the intent of closing up the corporation, can by abandoning the corporate property remaining here, and escaping from the state after the filing of the shareholders' bill before service upon them, defeat the efforts of the shareholders to secure their equitable interest, in what is left through the courts of the state where the property is.   To assent to this proposition is to deny the courts of a state jurisdiction over all property in it, and to assert the indefensible doctrine that property owned by a foreign corporation is beyond the law.

The plea avers that the Construction Company has no property in this state.   If this be so, the action is not maintainable upon any ground heretofore considered; but this averment denies only by argument the Construction Company's right of action against the pleader, and the plea is bad because argumentative.   If not open to this objection, the plea would avail nothing; for a joinder of the issue so tendered would involve the trial of the whole case made by the bill.   If the admission of the facts alleged in the bill were actual instead of formal, the question in what way the equitable rights of the plaintiffs in such fund are to be worked out would now be raised.   The question may never arise, because the plaintiffs may fail to establish the existence of the fund.   If they do establish it, the corporation may appear and claim it.   Whether, if the corporation does not, it will be necessary to appoint a receiver here to take charge of the fund; whether this court will undertake to distribute the fund and close up the corporation, or

order the funds into the hands of a receiver in Connecticut; and whether the plaintiffs may not in some state of facts provable under the bill be entitled themselves to a judgment against the pleader, are questions which have been discussed, but which it is not now advisable to consider. The court has no jurisdiction, as the case has been considered, unless the fund is here. The jurisdictional fact being in dispute, convenience requires that this fact be settled before time is taken to consider difficult questions of law which may not be material in the case. The only material question now is, whether the plaintiffs can proceed and establish the claim of their corporation against a New Hampshire corporation. Of this claim the courts of this state have jurisdiction. Except by consent of the Traction Company, a domestic resident corporation, no other court could acquire jurisdiction. Manifestly, the claim must be litigated here, if at all. The plea was properly overruled.

*Exception overruled.*

All concurred.