Reba A. SEIDEL

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE; Charles E. Bayless; William T. Frain, Jr.; Robert J. Harrison; David N. Merrill; William C. Tallman; and Peat, Marwick Mitchell & Co.

Ruth STEPAK

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE; Peat, Marwick Mitchell & Co.; Charles E. Bayless; William T. Frain, Jr.; Robert J. Harrison; David N. Merrill; William C. Tallman.

ZUCKER ASSOCIATES, INC., on behalf of PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

v.

George A. DORR, Jr.; Philip S. Dunlap; Priscilla K. Frechette; Robert J. Harrison; David N. Merrill; Ann R. Moody; John J. Reilly, Jr.; Philip B. Ryan; John T. Schiffman; William M. Scranton; Edward M. Shapiro; William C. Tallman; Hugh C. Tuttle; Richard E. West; and Public Service Company of New Hampshire, a nominal defendant.

Robert MARKEWICH, derivatively on Behalf of PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

v.

William C. TALLMAN; Robert J. Harrison; David N. Merrill; Charles E. Bayless; D. Pierre G. Cameron, Jr.; George S. Thomas; George Branscombe; Robert G. Ouellette; George A. Dorr, Jr.; Phillip S. Dunlap; Priscilla K. Frechette; Harlan L. Goodwin; Ann R. Moody; John J. Reilly, Jr.; William M. Scranton; Edward M. Shapiro; Hugh C. Tuttle; Richard E. West; David S. Williams; United Engineers and Constructors, Inc.; and Public Service Company of New Hampshire, a nominal defendant.

Jonathan JACOBS, individually and on behalf of those similarly situated

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE; Charles E. Bayless; William T. Frain, Jr.; Robert J. Harrison; David N. Merrill; William C. Tallman; Peat, Marwick Mitchell & Co.; Blyth Eastman Paine Webber, Incorporated; Kidder Peabody & Co., Incorporated; Shearson/American Express, Inc., individually and as representatives of a defendant class.

Honor BOTOS; and Sidney J. Silver, Trustees of the Printing Management Services, Inc., Pension Plan, derivatively and on behalf of Public Service Company of New Hampshire

v.

W.C. TALLMAN; G.A. Darr, Jr.; H.L. Goodwin; Priscilla K. Frechette; R.J. Harrison; P.S. Dunlap; John J. Reilly, Jr.; D.N. Merrill; H.C. Tuttle; R.E. West; D.S. Williams; W.M. Scranton; E.M. Shapiro; Public Service of New Hampshire, nominal defendant.

Jean FENDALL, individually and on Behalf of those similarly situated

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE; Charles E. Bayless; William T. Frain, Jr.; Robert J. Harrison; David N. Merrill; William C. Tallman; Peat, Marwick Mitchell & Co.

Joseph LINDENBAUM

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE; Charles E. Bayless; William T. Frain, Jr.; Robert J. Harrison; David N. Merrill; William C. Tallman; Peat, Marwick Mitchell & Co.

Alfred J. CICCI, as Trustee for the Sophiann Cicci Trust

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE; Charles E. Bayless; William T. Frain, Jr.; Robert J. Harrison; David N. Merrill; William C. Tallman; Ann R. Moody; John J. Reilly, Jr.; Philip B. Ryan; William Scranton; Edward W. Shapiro; Richard E. West;

Kidder, Peabody & Co., Incorporated; Blyth Eastman Paine Webber, Incorporated; Shearson/American Express, Inc.; Peat, Marwick Mitchell & Co.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, derivatively by HABER CRUSHED FRUIT CO. PENSION TRUST

v.

William C. TALLMAN; Robert J. Harrison; David N. Merrill; Charles E. Bayless; D. Pierre G. Cameron, Jr.; George S. Thomas; George Branscombe; Robert G. Ouellette; George A. Dorr, Jr.; Phillip S. Dunlap; Priscilla K. Frechette; Harlan L. Goodwin; Ann R. Moody; John J. Reilly, Jr.; William M. Scranton; Edward M. Shapiro; Hugh C. Tuttle; Richard E. West; David S. Williams; United Engineers and Constructors, Inc.; and Public Service Company of New Hampshire (nominal defendant).

Diana BRAWER

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE; Charles E. Bayless; David N. Merrill; William C. Tallman; Peat, Marwick Mitchell & Co.; Kidder, Peabody & Co., Incorporated; Blyth Eastman Paine Webber Incorporated; Shearson/American Express, Inc.

Reba A. SEIDEL; Ruth Stepak; Jonathan Jacobs; Jean Fendall; Joseph Lindenbaum; Alfred J. Cicci, as Trustee for the Sophiann Cicci Trust; and Diana Brawer, each individually and on behalf of those similarly situated

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE; Charles E. Bayless; William T. Frain, Jr.; Robert J. Harrison; David N. Merrill; William C. Tallman; Peat, Marwick Mitchell & Co.; Blyth Eastman Paine Webber Incorporated; Kidder Peabody & Co., Incorporated; Shearson/American Express, Inc., individually and as representatives of a defendant class.

Reba A. SEIDEL; Ruth Stepak; Jonathan Jacobs; Jean Fendall; Joseph

Lindenbaum; Alfred J. Cicci, as Trustee for the Sophiann Cicci Trust; Diana Brawer, each individually and on behalf of those similarly situated

v.

ROPES & GRAY; Sulloway, Hollis & Soden.

Nedra FISCHER, individually and on Behalf of those similarly situated

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE; Charles E. Bayless; William T. Frain, Jr.; Robert J. Harrison; David N. Merrill; William C. Tallman; Peat, Marwick Mitchell & Co.; Ropes & Gray; Sulloway, Hollis & Soden; Blyth Eastman Paine Webber Incorporated; Kidder Peabody & Co. Incorporated; Shearson/American Express, Inc., individually and as representatives of a defendant class.

Civ. Nos. 84–197–D, 84–205–D, 84–206–D, 84–220–D, 84–250–D, 84–280–D, 84–289–D, 84–330–D, 84–358–D, 84–383–D, 84–410–D, 84–541–D, 85–79–D and 85–287–D.

United States District Court, D. New Hampshire.

Aug. 27, 1985.

Law Office of Kenneth G. Bouchard by Kenneth G. Bouchard, Mark Mallory, Manchester, N.H., Morris & Rosenthal by Irvin Morris, Kevin Gross, Wilmington, Del., Kohn, Savett, Marion & Graf, P.C. by Stuart H. Savett, David H. Weinstein, Robert J. LaRocca, Barbara A. Podell, Philadelphia, Pa., for Seidel, Stepak, Jacobs, Fendall, Lindenbaum, Cicci and Brawer.

Kenneth G. Bouchard, Manchester, N.H., Harvey Greenfield, New York City, Berman DeValerio & Pease by Glen DeValerio, Norman Berman, Boston, Mass., for Stepak.

Stull, Stull & Brody by Richard J. Stull, John Daley, Robert A. Stull, Jules Brody, New York City, Sanders & McDermott, Hampton, N.H., for Zucker Associates, Inc.

Perkins & Upshall, P.A. by Frederick E. Upshall, Jr., Concord, N.H., for Markewich, Botos, Silver, PSC of N.H.

Wolf, Haldenstein, Adler, Freeman & Herz by Fred Taylor Isquith, New York City, for Markewich.

Levin & Fishbein by Arnold Levin, Howard J. Sedran, Philadelphia, Pa., for Botos and Silver.

Alvin J. Ivers, P.C. by Alvin J. Ivers, Philadelphia, Pa., for Fendall.

Schoengold & Sporn, P.C. by Samuel P. Sporn, Moshe Balsam, Richard Appleby, New York City, for Lindenbaum.

Goodkind, Wechsler, Labaton & Rudoff by Robert S. Schachter, Law Offices of Joseph H. Weiss by Joseph H. Weiss, New York City, for Cicci.

Greenfield, Chimicles & Lewis by Carole A. Broderick, Haverford, Pa., for PSC of N.H.

A. Arnold Gershon, New York City, for Brawer.

Law Office of Kenneth G. Bouchard by Kenneth G. Bouchard, Mark Mallory, Manchester, N.H., Gross & Sklar, P.C. by Eugene A. Spector, Bernard M. Gross, Jay Sacks Cohen, Philadelphia, Pa., for Fischer.

Brown & Nixon by David W. Hess, Manchester, N.H., Sidley & Austin by Robert D. McLean, Michael J. Sweeney, David D. Hiller, Chicago, Ill., for Peat, Marwick Mitchell & Co.

Sulloway, Hollis & Soden by Irvin D. Gordon, Concord, N.H., Cahill, Gordon & Reindel by David R. Hyde, Thomas R. Jones, Gary W. Wolf, R. Anthony Zeiger, New York City, for PSC of N.H., Bayless, Frain, Harrison, Merrill, Tallman, Dorr, Dunlap, Frechette, Moody, Reilly, Ryan, Schiffman, Scranton, Shapiro, Tuttle, West, Cameron, Thomas, Branscombe, Ouellette, Goodwin and Williams.

Pierre O. Caron, Associate Gen. Counsel, Manchester, N.H., for PSC of N.H., Bayless, Frain, Harrison, Merrill and Tallman.

Sheehan, Phinney, Bass & Green by Bradford E. Cook, Manchester, N.H., for Shapiro.

McLane, Graf, Raulerson & Middleton by Jack B. Middleton, Manchester, N.H., Schnader, Harrison, Segal & Lewis by Bernard J. Smolens, John E. McKeever, Philadelphia, Pa., for United Engineers and Constructors, Inc.

Gallagher, Callahan & Gartrell by Michael R. Callahan, Concord, N.H., Cravath, Swaine & Moore by Alan J. Hruska, Stephen S. Madsen, Sheryl E. Reich, New York City, for Blyth Eastman Paine Webber Inc., Kidder Peabody & Co. Inc. and Shearson/American Exp. Inc.

Sheehan, Phinney, Bass & Green by Michael C. Harvell, Manchester, N.H., Debevoise & Plimpton by Robert J. Geniesse, Thomas Carroll, Washington, D.C., for Ropes & Gray.

Wadleigh, Starr, Peters, Dunn & Chiesa by John E. Friberg, Manchester, N.H., Widett, Slater & Goldman, P.C. by James S. Dittmar, David J. Brody, Eileen M. Herlihy, Boston, Mass., for Sulloway, Hollis & Soden.

## OPINION AND ORDER

DEVINE, Chief Judge.

In this securities litigation, the Court has before it for resolution after hearing the issues raised by motions to dismiss filed by the respective defendants.

These fourteen actions, consolidated for convenience, have been brought by irate shareholders of Public Service Company of New Hampshire ("PSNH"). Their source is to be found in the efforts of PSNH, the largest electrical utility in New Hampshire, to construct a nuclear power plant in Seabrook, New Hampshire.

As the nature of the cases, the identities of the respective defendants, and the relief sought vary somewhat among the litigants, the Court has grouped the cases pursuant to their similarities.[1] The Court considers

---

1. One group concerns "derivative" actions, so-called, in which PSNH is only a nominal defendant, and the other named defendants are individuals who were at relevant times officers and/directors of PSNH. Two of the cases in the derivative action group also named United Engineers and Constructors, Inc., which at per-

tinent times was the contractor on the Seabrook nuclear power plant construction. There is a group of "class actions" which include as defendants PSNH, certain officers and directors, its accounting firm, and its underwriting firms. And there is another group of two cases seeking class action relief against two named law firms.

these groups separately in the course of this Opinion and Order.

### 1. The Derivative Actions

Four in number, with five plaintiffs represented, the derivative actions in order of filing were brought by Zucker Associates on March 26, 1984 (C. 84–206–D); by Robert Markewich on March 29, 1984 (C. 84–220–D); by Honor Botos and Sidney J. Silver as trustees of a certain pension trust on May 25, 1984 (C. 84–280–D); and by Haber Crushed Fruit Company pension trust on May 25, 1984 (C. 84–383–D). In each case PSNH is named as a nominal defendant, and the principal defendants are certain individuals who at relevant times were alleged to be directors and/or officers of PSNH. Additionally, two of the cases (those brought by Markewich and Haber Crushed Fruit Company) name as a defendant United Engineers and Constructors, Inc. ("UEC"), which was at relevant times a construction contractor at the Seabrook plant.

> A stockholder's derivative action
>
> is an invention of equity to supply the want of an adequate remedy at law to redress breaches of fiduciary duty by corporate managers. Usually the wrongdoing officers also possess the control which enables them to suppress any effort by the corporate entity to remedy such wrongs. Equity therefore traditionally entertains the derivative or secondary action by which a single stockholder may sue in the corporation's right when he shows that the corporation *on proper demand* has refused to pursue a remedy, or shows *facts* that demonstrate the futility of such a request.

*Koster v. Lumbermens Mutual Co.,* 330 U.S. 518, 522, 67 S.Ct. 828, 830, 91 L.Ed. 1067 (1947) (emphasis added).

Each of the derivative action complaints invokes the application of the provisions of Rule 23.1, Fed.R.Civ.P.,[2] which provides:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

 The initial argument raised by the individual director-defendants of PSNH is to the effect that the action[3] of the derivative plaintiffs must be dismissed or, alternatively, stayed because of the inability of the plaintiffs to "adequately represent the

---

**2.** Although the complaints thus invoke Rule 23.1, plaintiffs now argue that state law should be applied and suggest that, if applicable, it would supplant Rule 23.1. However, for relevant purposes; that is, for the necessity of a prelitigation demand, it is clear that the law of New Hampshire would require such demand. *Kidd v. New Hampshire Traction Company,* 72 N.H. 273, 288, 56 A. 465 (1903).

**3.** On September 7, 1984, all plaintiffs in the derivative actions joined in the filing of a "Verified First Amended Derivative Action Complaint" a fair reading of which demonstrates that included therein are many more detailed allegations of fault on the part of the defendants than were set forth prior to or at the inception of the derivative actions.

interests of the shareholders ... similarly situated in enforcing the right of the corporation....". Rule 23.1, *supra*. This contention, however, is grounded largely on speculation as to the effect the continuance of the derivative action litigation would have on an upcoming (and apparently as yet unscheduled) rate hearing before the New Hampshire Public Utilities Commission ("PUC"), and the defense by those named therein of the pending class action complaints.

Accordingly, while a Court should give consideration to "outside entanglements making it likely that the interests of the other stockholders will be disregarded in the management of the suit", *G.A. Enterprises, Inc. v. Leisure Living Communities, Inc.*, 517 F.2d 24, 27 (1st Cir.1975), a stockholder sharing a common interest in the subject matter of the suit is not to be held an inadequate representative by "purely hypothetical, potential or remote conflicts of interest". *Id.* The state of the record before the Court is not sufficient to find that the actions could be dismissed for failure of these derivative plaintiffs to adequately represent the interests of similarly situated shareholders.

■ Nor are the subsequently-filed class actions sufficiently duplicative of the derivative actions to warrant a finding that a stay of these proceedings should be had. As there is no indication of a scheduled rate base hearing before PUC, and as the Court finds that continuation of the action will not necessarily interfere with the other class actions, the alternative remedy of stay is not available.

Of considerably more merit is the second argument of the defendants in the derivative action cases to the effect that the complaints fail to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors ... and the reasons for his failure to obtain the action or for not making the effort." Rule 23.1, *supra*.

Described as "not an ordinary, but an exceptional rule of pleading, serving a special purpose, and requiring a different judicial approach", *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 263 (1st Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973), the prelitigation demand on corporate directors mandated by Rule 23.1, *supra*, is vigorously enforced in the First Circuit. *Grossman v. Johnson*, 674 F.2d 115, 125 (1st Cir.), *cert. denied sub nom. Grossman v. Fidelity Municipal Bond Fund, Inc.*, 459 U.S. 838, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982); *Heit v. Baird*, 567 F.2d 1157, 1160 (1st Cir.1977). Otherwise stated, the First Circuit takes a "strict view, generally, of the requirement of prior demand". *Untermeyer v. Fidelity Daily Income Trust*, 580 F.2d 22, 23 (1st Cir. 1978).

The initial complaint here filed, that of Zucker Associates, made no reference to any demand, merely stating in conclusory terms that plaintiff believed such demand would be futile. A similar conclusory pleading was filed by the plaintiffs Botos and Silver in their complaint, and plaintiff Haber Crushed Fruit Company in turn merely tried to "piggyback" what it perceived to be a proper demand made by plaintiff Markewich in the course of his approach to these proceedings.

■ The law is well established that the futility of a demand before suit is to be gauged as of the time the derivative action is commenced, not as of a later date when hindsight affects clarity. *Grossman v. Johnson, supra*, 674 F.2d at 123. And the ·mere fact that all of the director-defendants are named furnishes no excuse for failure to make such a demand, *Heit v. Baird, supra*, 567 F.2d at 1162, nor are bare allegations of "wrongful participation" or "acquiescence" sufficient to satisfy the requirement of demand. *Grossman, supra* at 124.

As hereinabove indicated, plaintiff Markewich is the only plaintiff who actually attempted to make a demand on the corporate directors of PSNH. His initial effort, pursuant to a letter of his counsel dated February 1, 1984, set forth in general, conclusory terms allegations of certain "improprieties" perceived to be causal of

financial losses to PSNH. Complaint Exhibit A. In response thereto, the secretary of PSNH by letter of February 10, 1984, advised counsel for Markewich that the letter was on the agenda for the regular meeting of the board of PSNH scheduled for March 15, 1984. Complaint Exhibit B. In turn, plaintiff's counsel, by letter of February 17, 1984, requested the opportunity to be present at the board meeting. Complaint Exhibit C. This offer was refused by PSNH through the letter of its secretary dated February 28, 1984, but therein counsel for Markewich was invited to submit for presentation to the board "any substantiation for, or particularization of, any of the allegations made" in his letter of February 1. Complaint Exhibit D. Such offer was not accepted, counsel for Markewich taking the position by letter of March 6, 1984, that only by personal appearance could the position of his client be properly presented. Complaint Exhibit E.

By letter of March 15, 1984, the secretary of PSNH advised counsel for plaintiff Markewich that the board had considered his prior letters, and with respect to the complaint contained in the letter of February 1 relative to the cessation of additional investments or borrowing in connection with the Seabrook plant, the board determined the best interests of the company and its shareholders, and customers required that the project proceed. Complaint Exhibit F. In the same letter, counsel for Markewich was advised that the request to institute legal proceedings detailed in the letters of February 1 and March 6, 1984, had been referred "to counsel for further study and to report back to the board at an upcoming regular meeting" thereof. *Id.*

Without further attempts at clarification, plaintiff Markewich filed his action on March 29, 1984, setting forth therein (although no such materials had been set forth in his prior demand) certain detailed allegations of improper action on the part of the defendants therein named.

■ However, the role of prelitigation demand "is to alert the director before suit is instituted". *Grossman v. Johnson, supra,* 674 F.2d at 125. And, absent a showing that his case is exceptional, a showing which this Court finds has not here been demonstrated, a stockholder must first afford the corporate directors the opportunity to occupy their normal status of regulating the affairs of the company. *Id.* at 125.

■ In short, Rule 23.1 requires specificality with reference to the *factual grounds* of the demand, *Grossman, supra* at 124; the antagonism between the interests of the directors and those of the corporation must be shown to be "unmistakable" or deemed futile to excuse such demand. *Id.* at 125.[4]

■ From what has heretofore been detailed, it is apparent that as against the individual director-defendants of PSNH derivative actions must be dismissed for failure to comply with the prelitigation demand requirements of Rule 23.1. And the claim made in two of these actions as against UEC is even more tenuous, for it was not until the letter of March 6, 1984, to the secretary of PSNH that counsel for plaintiff Markewich, for the first time, made any reference to a claim against UEC, and said reference was in conclusory terms set forth in one paragraph of said

---

4. By contrast with the varied letters which Markewich contends set forth the proper demand, the original complaint, filed some 14 days after the board meeting which considered such letters, contains particular allegations of conflicting construction cost estimates (¶ 22); multiple security offerings resulting in alleged dilution of stock values (¶ 23); distortion of income reports (¶¶ 26–29); false and misleading proxy statements (¶ 23); and annual reports (¶ 35). While the Court does not intend this litany of alleged instances of mismanagement to be exhaustive, it finds it difficult to perceive that such itemization was not available for inclusion in any prelitigation demand made upon the directors of PSNH. Coming as it does in the complaint, it is too late to meet the requirements of Rule 23.1. *Grossman v. Johnson, supra,* 674 F.2d at 125.

letter.[5] On the basis of the legal authorities hereinabove cited with respect to the failure of proper demand on the individual director-defendants of PSNH, it is clear that the actions against UEC must similarly be dismissed for failure to comply with the demand requirements of Rule 23.1.[6]

█ In short, the Court finds and rules that all of the derivative actions herein fail to meet the demand requirements of Rule 23.1 within the mandate of the rules of law set down by the First Circuit, and, accordingly, each of such derivative actions is herewith dismissed without prejudice. The Court also finds and rules that, under all of the circumstances herein, none of the parties to these derivative actions is entitled to recover attorney fees of any of the other parties and rules that each party shall bear its own attorney fees with respect to the derivative actions.

### 2. The "Class Actions" Against Defendants Other than Law Firms

Nine in number, with eight plaintiffs represented,[7] the "class actions" name as de-

fendants PSNH, its independent officers and/or directors; its accounting firm, Peat, Marwick, Mitchell & Co.; its "managing underwriters", Blyth Eastman Paine Webber, Inc., Kidder Peabody & Co., Inc., and Shearson/American Express, Inc.; and two law firms, Ropes & Gray, and Sulloway, Hollis, & Soden.[8] This portion of the Opinion concerns all of the "class actions" other than those brought against the two law firms.

### A. The Actions Against PSNH and its Directors and/or Officers

For reasons unclear, both plaintiffs and defendants have sought to overwhelm the Court with a mass of factual data which the Court finds it may not properly consider at this stage of these proceedings.[9] The defendants' initial ground for dismissal is failure to state a claim pursuant to Rule 12(b)(6), Fed.R.Civ.P. In relevant part, that Rule states:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which

**5.** In addition to the demand which we made on behalf of our client in our letter of February 1, 1984, we are hereby making a further request that the company take appropriate action against United Engineers and Construction, Inc. and Raytheon Company, the companies directly responsible for the construction of the Seabrook Plant, with respect to the performance of their obligations to Public Service Company of New Hampshire. We would expect this matter to be taken up at the next Board meeting as well.
Complaint Exhibit E.

**6.** Moreover, paragraph 46 of the original complaint indicates that had proper demand been made on the director-defendants of PSNH relative to action over against UEC, it might well have met with a warm reception. That paragraph of the complaint refers to certain statements of the defendant Harrison, then president and chief executive officer of PSNH, made on March 1, 1984, wherein he indicates that PSNH had referred to its counsel the possibilities of legal action against UEC. This statement was attributed to have been made by Harrison some five days before the March 6, 1984, letter from counsel for Markewich to the secretary of PSNH.

**7.** In order filed, the nine cases are: 84–197, Seidel; 84–205, Stepak; 84–250, Jacobs; 84–289,

Fendall; 84–330, Lindenbaum; 84–358, Cicci; 84–410, Brawer; 84–541, Seidel; 85–79, Seidel; 85–287, Fischer. The latter action brought in behalf of plaintiff Fischer was not filed until the schedule for briefing on the instant motions had already taken place. It is therefore not considered in the instant Order. Additionally, of the three actions brought by Seidel, 84–197 and 84–541 concern the defendants other than the law firms, while the third action, 85–79, presents a separate class action against the law firms.

**8.** The class actions herewith considered in this section of the Opinion are as set forth in the consolidated complaint filed in 84–541–D. As indicated, n. 7, supra, a separate action has been brought against the law firms and will be subsequently considered in the course of the Order.

**9.** The defendants have filed extensive "appendices" suggesting that the documents therein are somehow incorporated by reference into the complaint. In addition, all parties have sought to lard their legal memos with extensive factual references.

relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

 Were the Court to accept the defendants' suggestion that it should consider the various documents contained in the defendants' "appendices" (none of which documents are appended to the complaint), the Court would be in violation of the quoted language of Rule 12(b)(6). Accordingly, the Court has not considered any of the factual allegations currently before it that are not alluded to in the complaint.[10] Not only would it be reversible error for the Court so to do without converting the motion to one for summary judgment, *Medina v. Rudman*, 545 F.2d 244, 247 (1st Cir.1976), *cert. denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 177 (1977), but such a conversion of the pleadings would necessarily entitle the plaintiffs to discovery. *Hebert v. Wicklund*, 744 F.2d 218, 222 n. 4 (1st Cir.1984). In securities litigations such as this where a motion to dismiss is grounded on Rule 12(b)(6), it is improper for a Court to consider such a factual challenge to the plaintiffs' complaint, *Kennedy v. Tallant*, 710 F.2d 711, 718 n. 6 (11th Cir.1983), and the fact that a plaintiff might quote from a corporate document in its pleading without appending such document to the pleading does not permit the defendants to introduce such document where a dismissal is sought pursuant to Rule 12(b)(6). *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir.1985).[11]

Accordingly, in addressing these 12(b)(6) motions the Court will follow the familiar requirement that the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Melo-Tone Vending, Inc. v. United States*, 666 F.2d 687, 688 (1st Cir. [1981] 1982); *Harper v. Cserr*, 544 F.2d 1121 (1st Cir.1976); *Dunlap v. Aulson Corporation*, 90 F.R.D. 647, 654 (D.N.H.1981).

*Chasan v. Village District of Eastman*, 572 F.Supp. 578 (D.N.H.1983), *aff'd without opinion* 745 F.2d 43 (1st Cir.1984).

 Turning to the complaint, that pleading, though prolix, generally sets forth its substantive claims in the various subdivisions of paragraph 94 thereof.[12] In simplified form, the plaintiffs allege that the defendants made misleading statements, failed to disclose material facts, and misrepresented material facts at times relevant to their investments in

1. Failing to disclose adverse testimony and facts underlying such testimony when the testimony was presented by one Paul Chernick on January 23, 1980, in a hearing before the Massachusetts Department of Public Utilities. The underlying facts relied upon allegedly concerned the cost of construction at Seabrook and the dates of completion of such construction. (*See* ¶ 94a–c.)

---

**10.** This means that the Court has not considered the materials set forth in the various appendices filed by defendants or any factual allegations in any legal memos of the parties that are not referenced in the complaint.

**11.** The defendants misplace reliance on *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111 (2d Cir. 1982), in light of the subsequent explanation of the rule therein relied on by the *Goldman* court in 754 F.2d at 1066. And *Crystal v. Foy*, 562 F.Supp. 422 (S.D.N.Y.1983), is no better as authority for consideration of defendants' document, as it in turn relied on *Decker, supra,* prior to the explanation by the *Goldman* court.

**12.** Paragraph 94 of the complaint in turn refers to certain earlier paragraphs of the complaint, and where these are relevant, the allegations that are included in the Court's abbreviated outline of the complaint are given consideration.

2. Failing to disclose facts adduced by Maine Public Utilities Commission leading to its findings of October 14, 1982, and November 30, 1982, which facts and findings were highly critical of defendants' estimates as to the cost and dates of completion of construction at Seabrook. (*See* ¶ 94d–f and i.)

3. Failing to disclose testimony and findings of PUC in its decision of April 29, 1983, which were highly critical of defendants' estimates of construction costs and completion dates for Seabrook. (*See* ¶ 94g.) [13]

Defendants first argue that this information was not material to any duties imposed upon them because it would overburden corporate entities if they were required to disclose every item of testimony or evidence critical of their position in a contested administrative hearing. This argument is grounded on language in a proxy-dispute case, *TSC Industries, Inc. v. Northway, Inc.* 426 U.S. 438, 448–49, 96 S.Ct. 2126, 2131–32, 48 L.Ed.2d 757 (1976), to the effect that disclosure of too much information might overburden stockholders, and that consideration must therefore be given to whether the allegedly omitted facts, in the mind of a reasonable investor, would significantly alter the "total mix" of available information. *Id.*

■ But the issue of materiality is held to be "a mixed question of law and fact" which is difficult of resolution even in the context of a summary judgment proceeding. *TSC Industries, Inc. v. Northway, Inc., supra* at 450, 96 S.Ct. at 2133. It is therefore best left to resolution following full development of a factual record. *See Pavlidis v. New England Patriots Football Club, Inc.* 737 F.2d 1227 (1st Cir.1984);

*SEC v. MacDonald,* 699 F.2d 47 (1st Cir. 1983). Accordingly, I find and rule that at this juncture of these proceedings the record before me does not permit granting of dismissal based on any argument as to "materiality" of the claims advanced by these plaintiffs.

■ Similarly, the Court finds it necessary to reject the argument that because the various administrative hearings detailed in paragraph 94 of the complaint were easily accessible through publicity to all investors, it cannot be relied on by these plaintiffs. The cases cited by defendants in support of this position are inapposite under the circumstances of the instant cases at this time.

For example, *Spielman v. General Host Corporation,* 538 F.2d 39 (2d Cir.1976) (per curiam), was an appeal from the findings and rulings of the trial court, reported at 402 F.Supp. 190 (S.D.N.Y.1975). With the trial record before it, the Second Circuit characterized the case as presenting

> the unusual, if not unique, situation where the 'total mix' of communications to, and knowledge of, shareholders of the target company renders harmless a potentially misleading omission in the prospectus....

*Spielman v. General Host Corporation, supra,* at 39–40.

In *Seibert v. Sperry Rand Corporation,* 586 F.2d 949 (2d Cir.1978), the appeal followed a summary judgment for the defendant in a case wherein the chief allegation was the failure of one director of defendant to include in his biographical proxy data information concerning labor disputes in which another corporation, of which he was the chief executive officer, had been involved. At trial, the Court had before it

---

**13.** The allegations of paragraph 94h are to the effect that defendants failed to properly disclose their right to receive periodic revised cost estimates from UEC. The Court concurs with the defendants that this paragraph of the complaint alleges only corporate mismanagement, and is therefore to be dismissed in the context of feder-al securities litigation. *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 477–78, 97 S.Ct. 1292, 1302–04, 51 L.Ed.2d 480 (1977); *Superintendent of Insurance v. Bankers Life and Casualty Company,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971).

summary judgment affidavits detailing the national publicity surrounding such labor disputes. *See* 586 F.2d at 952.

And *Rodman v. Grant Foundation*, 608 F.2d 64 (2d Cir.1979), also involved an appeal from a summary judgment reported at 460 F.Supp. 1028 (S.D.N.Y.1978) wherein extensive discovery had been had.[14] Additionally, *Johnson v. Wiggs*, 443 F.2d 803 (5th Cir.1971), was an appeal from a trial where discovery was had of the material in the public domain.

Accordingly, while the above-cited cases may well be authoritative for the general rules concerning materiality and information in the public domain, they are simply not relevant, I find, at this stage of the litigation where I am merely considering those factual matters detailed in the complaint.

The defendants also contend that the complaint requires dismissal for failure of the plaintiffs to plead fraud with particularity. This argument is based upon Rule 9(b), Fed.R.Civ.P., which provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Count I of the complaint is grounded upon section 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act"), codified at 15 U.S.C. § 78j(b).[15] Its implementing regulation, Rule 10b–5, is codified at 17 C.F.R. § 240.10b–5.[16]

Counts II through V of the complaint are grounded on sections 11 and 12 of the Securities Act of 1933 ("the 1933 Act"), codified, respectively, at 15 U.S.C. § 77k[17] and 77*l*.[18] Count VI alleges intentional misrepresentation at common law, and

---

**14.** The Second Circuit described such discovery as containing over 9500 pages of testimony and more than 100,000 pages of documents. *Rodman, supra,* 608 F.2d at 66.

**15.** 15 U.S.C. § 78j(b) provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> . . . .
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**16.** 17 C.F.R. § 240.10b–5 provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,

> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

**17.** 15 U.S.C. § 77k permits actions where security registration statements contain untrue statements of material fact or omit statements of material fact required to be stated therein or necessary to make such statements not misleading by any person who acquires such security as against signatories to the registration statements, directors or partners of the issuer at the time of filing of such statements, all persons named in such statements as being or about to become directors, and all accountants, engineers, or appraisers or persons whose profession gives authority to statements made by them and who with their consent have been named as having prepared or certified any part of such statements or having prepared or certified any report or valuation used in connection with such statements, as well as every underwriter with respect to such securities.

**18.** 15 U.S.C. § 77*l* imposes liability on those who offer or sell securities by the use of any means or instruments of transportation or communication in interstate commerce or the mail by means of a prospective or oral communication which includes untrue statements of material fact or omits to state material facts necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.

**1356**

Count VII contains allegations of negligent misrepresentation at common law.

■■■ Where applicable, Rule 9(b) requires that the *circumstances* of fraud be stated with particularity, its purpose being to protect the defendants from unfair surprise and to discourage "strike suits".[19] *Simcox v. San Juan Shipyard, Inc.,* 754 F.2d 430, 439 (1st Cir.1985) (citations omitted) (emphasis in original). Where a claim is grounded upon section 10(b) or Regulation 10b–5 of the 1934 Act, liability may be imposed only on proof of "scienter"; that is, "a mental state embracing intent to deceive, manipulate, or defraud". *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193–94 n. 12, 96 S.Ct. 1375, 1380–81 n. 12, 47 L.Ed.2d 668 (1976). Scienter may be established by proof of knowing conduct. *SEC v. MacDonald, supra,* 699 F.2d at 50.

Defendants argue that the fraud pleading requirements of Rule 9(b) apply to Counts I through VI of the complaint. While plaintiffs concede that Count I and Count VI [20] are grounded in allegations of fraud, they argue in turn that they have met all applicable pleading requirements with respect to these counts. Plaintiffs also argue that Counts II through V are not subject to the fraud requirements of Rule 9(b), as these counts are grounded at least in part on section 11 of the 1933 Act and therefore require proof only of a material misrepresentation or omission for the establishment of a prima facie case. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 382, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983).

The salient allegations of Count I are set forth in paragraph 97 thereof, which states in relevant part that the defendants

either had actual knowledge of the materially false and misleading statements and material omissions ... concerning the Total Cost Figure and the Completion Date and intended thereby to deceive the plaintiffs ... or, in the alternative, the defendants acted with reckless disregard for the truth and they failed or refused to ascertain such facts as would have revealed the materially false and misleading nature of the statements made, although the facts were readily available to the defendants all incident to the sale of PSNH securities by PSNH to the investing public in violation of Section 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder.

■■■ The scienter requirement of pleading pursuant to section 10 and Rule 10b–5 is satisfied by allegations of reckless conduct. *Cook v. Avien,* 573 F.2d 685, 692 (1st Cir.1978); *Gilman v. Shearson/American Express, Inc.,* 577 F.Supp. 492, 497 (D.N.H.1983). I find that Count I complies with the pleading requirements of Rule 9(b).[21]

■■■ Each of Counts II through V alleges in identical language with respect to the corporate documents relied on in each said count that each of the defendants named in such count caused to be issued and participated in the issuance and dissemination by transportation or communication in interstate commerce or the mails statements which

contained untrue statements of material facts and/or omitted to state material facts required to be stated therein or necessary to make the statements there-

---

**19.** In securities litigation, the term "strike suit" equates with suits "brought not to redress real wrongs, but to realize upon their nuisance value". *Cohen v. Beneficial Loan Corporation,* 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949).

**20.** Under the common law of New Hampshire, a claim of intentional misrepresentation is grounded in fraud. *Manchester Bank v. Connecticut Bank & Trust Company,* 497 F.Supp. 1304, 1316 (D.N.H.1980).

**21.** I also find that there is no merit to the suggestion that the pleadings fail because allegations of fraud must be made with respect to each of the individual defendants. I find the pleadings adequate within the rule set forth in *Kilmartin v. H.C. Wainwright & Co.,* 580 F.Supp. 604, 608 (D.Mass.1984).

in not misleading in violation of sections 11 and 12 of the 1933 Act.

Clearly, such allegations comply with the liberal requirement set forth in *Herman & MacLean v. Huddleston, supra.* I further find that Rule 9(b) has no application to such "allegations of breach of duty" grounded on "conduct not amounting to fraud or mistake". *Shapiro v. Miami Oil Producers, Inc.,* 84 F.R.D. 234, 236 (D.Mass.1979). I further find that the mere fact that each of Counts II through V purports to incorporate earlier allegations of fraud does not serve to require that with respect to claims grounded on sections 11 and 12 of the 1933 Act such specificity of pleading is required.[22]

The next argument of the defendants is that each of Counts III through V of the complaint must be dismissed because the plaintiffs have failed to allege purchase of the securities at issue from either PSNH or the individual director-defendants. The source of this argument is *Collins v. Signetics Corporation,* 605 F.2d 110 (3d Cir. 1979), wherein the record before the court on summary judgment contained materials which clearly demonstrated that the securities at issue had been sold only by underwriters to the plaintiffs.

Neither the Supreme Court nor the First Circuit have spoken definitively with respect to this argument to the effect that there must be privity between each purchaser and each seller of securities before recovery may be had. There is a definite conflict among the Circuits with regard to the rigidity of this argument. *See, e.g., Davis v. Avco Financial Services, Inc.,*

739 F.2d 1057, 1063–68 (6th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1359, 2713, 84 L.Ed.2d 381 (1985). Without attempting to predict the rule which is to be followed in this Circuit, I merely find and rule that the record before me is insufficient for me to determine at this stage of the proceedings the identity of the sellers of the securities to each of the plaintiffs herein. Under these circumstances, this argument fails as a ground for dismissal of the complaint.

■ The defendants additionally urge that the statute of limitations set forth in section 13 of the Act, codified at 15 U.S.C. § 77m[23] bars these actions as regards all claims brought pursuant to sections 11 and 12 of the 1933 Act except those purchases made by plaintiffs Seidel, Stepak, and Cicci within one year of the date of filing of the amended complaint. Although plaintiffs suggest otherwise, the well-established rule in the First Circuit is that when the statute of limitations is interposed as a defense in securities litigation, the burden of proof of compliance with its requirements rests upon the plaintiffs. *Hoffman v. Estabrook & Co., Inc.,* 587 F.2d 509, 518 (1st Cir.1978); *Cook v. Avien, supra,* 573 F.2d at 695.

■ At the outset, the Court notes that in both her original complaint filed on April 18, 1984, and in the amended complaint filed on August 16, 1984, the plaintiff Fendall joins only in those claims grounded on section 10(b) and Rule 10b–5 of the 1934 Act as well as the common law claims. She makes no allegations pursuant to sections 11 or 12 of the 1933 Act, and there-

---

**22.** *Wayne Investment, Inc. v. Gulf Oil Corporation,* 739 F.2d 11 (1st Cir.1984), is but another case wherein the Court had before it affidavits and other additional pleadings to supplement the record. That is not here the case, and defendants therefore can derive little assistance from this decision in the context of the present status of this litigation.

**23.** 15 U.S.C. § 77m provides
No action shall be maintained to enforce any liability created under section 11 or section 12(2) unless brought within one year after the

discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 12(1), unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 11 or section 12(1) more than three years after the security was bona fide offered to the public or under section 12(2) more than three years after the sale.

fore the statute of limitations defense has no application to her.[24] As to the remaining plaintiffs, I find that the date of filing of their original complaints is the pertinent date from which the statute is to be measured under the doctrine of "relation back". Rule 15(c), Fed.R.Civ.P.; *Sweeney v. Keystone Provident Life Insurance Company,* 578 F.Supp. 31, 34 (D.Mass. 1983).

■ Accordingly, the claim of plaintiff Brawer, originally filed on June 8, 1984, and alleging stock purchases on April 13, 1982, but discovery of the alleged actions and omissions of defendants as of March 1, 1984 (¶ 29, original Complaint), withstands the motion to dismiss for failure to comply with the statute of limitations. Similarly, the claims of the plaintiffs Jacobs, the original complaint of which was filed April 5, 1984, alleging stock purchased on June 29, 1983; Lindenbaum, original complaint filed May 10, 1984, concerning stock purchases in June of 1983; and Cicci, original complaint filed May 24, 1984, concerning stock purchases on October 25, 1983, are all within the minimal one-year provision of the statute and are not subject to dismissal on that ground.

This leaves remaining only those portions of the complaints of plaintiffs Seidel and Stepak involving stock purchases taking place more than one year prior to the date of filing of their original complaint. As regards plaintiff Seidel, whose original complaint was filed on March 22, 1984, the purchases involved occurred on October 29, 1981, and May 17, August 16, and November 15, 1982, and February 15, 1983. With regard to plaintiff Stepak, his original com-

plaint was filed on March 26, 1984, and the stock purchases beyond the one-year period include the initial purchase on February 28, 1980, and subsequent purchases on February 25, May 17, August 16, and November 15, 1982, and February 15, 1983. With regard to each such purchase as regards these plaintiffs, I find and rule that for failure to properly plead in regard to the applicable principles of this Circuit, the motions to dismiss have validity, and I dismiss all claims grounded on such stock purchases. *Cook v. Avien, supra.*[25]

**B.** *The Actions Against the Underwriter Defendants*

These defendants are identified in paragraph 2 of the amended complaint as "the managing underwriters and representatives for all the underwriters" alleged to have participated in the sales of PSNH common stock in 1982 and 1983 and in sales of its preferred stock in 1983. It is further alleged that these defendants participated in the filing of an April 13, 1982, Registration Statement and Prospectus which contained or omitted facts such as to violate sections 11 and 12 of the 1933 Act and section 10(b) and Rule 10b–5 of the 1934 Act. ¶ 24, Amended Complaint. Similar allegations are made with reference to such statements and prospectuses dated June 22, 1983, and October 18, 1983, concerning, respectively, offerings of common and preferred stock. ¶¶ 25 and 26, Amended Complaint.

■ Of the original complaints filed, only those of plaintiffs Jacobs, Cicci, and Brawer named the underwriters as prospective defendants. The earliest of such

---

24. Actions brought pursuant to 10(b) and 10b–5 apply the state limitations applicable to the state cause of action most similar to Rule 10b–5 which best effectuates the rule's purpose. *Kilmartin v. H.C. Wainwright Co., supra,* 580 F.Supp. at 608–09. In New Hampshire, the applicable statute would therefore appear to be RSA 508:4 I, which requires such suits to be brought within six years of the time the cause of action accrued. As Fendall alleges stock purchases which occurred on October 20, 1982, and

her original complaint was filed on April 18, 1984, it would appear that her 10b–5 claim is viable.

25. As the remainder of plaintiffs' federal security law claims are extant, the Court need not consider the defendants' suggestion that the pendent claims detailed in Counts VI and VII be dismissed.

complaints was filed by plaintiff Jacobs on April 5, 1984, and the statute of limitations set forth in section 13, 15 U.S.C. § 77m, therefore commenced to run as of said date. The "identity of interests" required by the provisions of Rule 15(c), Fed.R. Civ.P., absent evidence of actual notice to these defendants of the commencement of the earlier actions, dictates such a result. *Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 102–03 (1st Cir.1979); *Swiss v. Eli Lilly & Co.*, 559 F.Supp. 621, 625–26 (D.R. I.1982).

However, the result is the same as heretofore discussed with reference to the actions against PSNH and its director-defendants. The statute of limitations runs only as to those stock purchases of plaintiffs Seidel and Stepak outlined in those earlier portions of this Opinion.

 In addition to their other substantive arguments,[26] these defendants suggest that, if dismissal is not ordered, a future continuation of this litigation by these plaintiffs should be conditioned on a bond in the amount of one million dollars. This argument is grounded upon certain provisions contained in section 11(e) of the 1933 Act, codified at 15 U.S.C. § 77k(e).[27] A favorable decision on such a request would require that the Court make a ruling that, to it "an eventual finding of bad faith or obvious lack of merit appear likely". *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 22 (9th Cir.1981). In light of the Court's current rulings on the dispositive motions before it, it is clear that such eventuality is not likely. *Currie v. Cayman Resources Corporation*, 595 F.Supp. 1364, 1379 (N.D.Ga. 1984). The request for an undertaking accordingly must be and it is herewith denied.

### C. The Claims Against the Accounting Firm

As against Peat, Marwick Mitchell & Co. ("Peat, Marwick"), plaintiffs allege that at relevant times it was retained as the public accounting firm for PSNH and that with reference to the financial affairs of PSNH it examined various financial statements, issued accounting reports, expressed opinions, and certified annual financial statements with knowledge and assent that certain of its opinions and certifications would be incorporated in registration statements and prospectuses made available by PSNH to the investing public, upon which prospective investors would rely. ¶ 21, Amended Complaint. The plaintiffs also allege that Peat, Marwick improperly allowed the use of certain aspects of Allowance for Funds Use During Construction ("AFUDC") in certain financial statements in violation of the accounting principles which govern such use of AFUDC.[28] ¶ 86, Amended Complaint. Additionally, the plaintiffs allege the issuance by Peat, Marwick of unqualified opinions as to the financial posi-

---

**26.** These arguments are identical with those raised by PSNH and the director-defendants, resolutions of which have been previously addressed earlier in the course of this Opinion and will therefore not be here repeated.

**27.** 15 U.S.C. § 77k(e) provides in relevant part: In any suit under this or any other section of this subchapter the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon the motion of the other party litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit, in an amount sufficient to reimburse him for the reasonable expenses incurred by him, in connection with such suit, such costs to be taxed in the manner usually provided for taxing of costs in the court in which the suit was heard.

**28.** Unlike the circumstances before the court in *Greenapple v. Detroit Edison Company*, 618 F.2d 198 (2d Cir.1980) (a two-to-one decision rendered on an appeal from a summary judgment proceeding), the allegations in the instant complaint could be construed to challenge the "innate legitimacy" of the use of AFUDC in such a fashion, an issue which the majority opinion in *Greenapple, supra,* specifically stated was not before it. 618 F.2d at 205.

tion of PSNH which it knew or issued in reckless disregard of the facts that demonstrated that such financial statements were materially false and misleading and were violative of certain well-accepted accounting principles. ¶¶ 90–93, Amended Complaint.

As has been said, albeit in a somewhat different context,

Corporate financial statements are one of the primary sources of information available to guide the decisions of the investing public. In an effort to control the accuracy of the financial data available to investors in the securities markets, various provisions of the federal securities laws require publicly held corporations to file their financial statements with the Securities and Exchange Commission. Commission regulations stipulate that these financial reports must be audited by an independent certified public accountant in accordance with generally accepted auditing standards. By examining the corporation's books and records, the independent auditor determines whether the financial reports of the corporation have been prepared in accordance with generally accepted accounting principles. The auditor then issues an opinion as to whether the financial statements, taken as a whole, fairly present the financial position and operations of the corporation for the relevant period.

*United States v. Arthur Young & Co.*, 465 U.S. 805, 104 S.Ct. 1495 at 1499–1500, 79 L.Ed.2d 826 (1984) (footnotes omitted).

Peat, Marwick tracks the identical arguments of the other defendants involved in this class action, including claims that it could not be considered to be a "seller" pursuant to section 12(2) of the 1933 Act. For the reasons previously detailed with respect to those arguments, the motions seeking dismissal on behalf of Peat, Marwick must also be denied.

### *3. The Claims Against the Law Firms*

The same group of plaintiffs who appear as such in the class action just discussed have brought a separate class action against Ropes & Gray ("Ropes") and Sulloway, Hollis & Soden ("Sulloway"), respectively alleged to have been the Massachusetts and New Hampshire law firms who represented PSNH at times relevant to this litigation. The complaint is grounded on alleged violations of sections 11 and 12 of the 1933 Act,[29] and section 10(b) and Rule 10b–5 of the 1934 Act,[30] and additionally alleges both Ropes and Sulloway to be "controlling persons pursuant to section 15 of the 1933 Act, codified at 15 U.S.C. § 77o[31] and section 20(a) of the 1934 Act, codified at 15 U.S.C. § 78t.[32] The complaint also contains counts detailing, respectively, allegations of intentional mis-

---

**29.** Violations of sections 11 and 12 of the 1933 Act are the basis for alleged recovery in Counts II through V of the complaint.

**30.** Violations of section 10(b) and Rule 10b–5 are the basis for recovery in Count I of the complaint.

**31.** Set forth as a basis for recovery in Counts II through V of the complaint, section 15 of the 1933 Act provides

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any

person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o.

**32.** Set forth as a basis for recovery in Count I of the complaint, section 20(a) of the 1934 Act provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or

representation and negligent misrepresentation.[33]

Claiming material misstatements and omissions in documents disseminated to prospective investors, the complaint alleges that the law firm defendants, in conjunction with the other defendants named in the class action previously discussed, failed to disclose the true costs and status of construction at Seabrook; failed to disclose the true meaning of AFUDC; failed to disclose the participation of PSNH in regulatory hearings held before utility regulators in Massachusetts, Maine, Vermont, and New Hampshire with the adverse filings resultant therefrom; and failed to disclose certain relevant proceedings before the Nuclear Regulatory Commission, with resulting harm to the plaintiffs. ¶¶ 20(a) thru (1) of Complaint. It is also alleged that the law firm defendants participated in the preparation, review, supervision, and dissemination to the investing public of relevant documents which contained either material misstatements or omissions, ¶ 21(a) thru (f) of Complaint, upon which the plaintiffs relied, ¶ 22 of Complaint, and that as attorneys for PSNH these defendants drafted, revised, researched, reviewed, or gave final approval to each such document in which the said defendants "are identified as being experts as to PSNH's legal proceedings, including state regulatory proceedings and proceedings before the NRC." ¶ 23 of Complaint. It is further alleged that the defendants singly or jointly represented PSNH before the regulatory bodies above described and were therefore aware through such representation of the findings and proceedings before such regulatory authorities but knowingly or recklessly participated in decisions to withhold or misstate such findings and proceedings to prospective investors. ¶ 24 of Complaint.

■ The initial attack of defendants is grounded on their claim that they were not acting as experts and that therefore they cannot be liable with respect to the claims advanced under section 11 of the 1933 Act. Generally speaking, if a lawyer's participation in documents of the type here at issue is other than that of an expert, such an argument presents a valid defense to claims under section 11. *Herman & MacLean v. Huddleston, supra,* 459 U.S. at 386 n. 22, 103 S.Ct. at 690 n. 22; *Escott v. Barchris Construction Corporation,* 283 F.Supp. 643, 683 (S.D.N.Y.1968). However, as paragraph 23 of the complaint here alleges that the defendants were acting as such experts, the Court is required to accept those allegations as true for the purposes of the motions to dismiss, and such argument furnishes no ground for dismissal. *Chasan v. Village District of Eastman, supra.*

■ The arguments that the law firm defendants are not within the purview of section 12(2) of the 1933 Act must similarly fail, as that statute imposes liability for "untrue statements and omissions of material facts", and the pleadings are sufficient to allege participation of these defendants in the preparation of the documents of the type within the coverage of such statute. One "uniquely positioned to ask relevant questions, acquire material information, or disclose his findings" can be deemed a seller within the meaning of section 12(2). *Hagert v. Glickman, Lurie, Eiger & Co.,* 520 F.Supp. 1028, 1035 (D.Minn.1981).

■ And as to the allegations that defendants are "controlling persons" under section 15 of the 1933 Act and section 20(a) of the 1934 Act, it is clear that such term

> means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies

---

acts constituting the violation or cause of action.
15 U.S.C. § 78t(a).

**33.** Count VI contains the allegations as to intentional misrepresentation, while Count VII contains the allegations as to negligent misrepresentation.

of a person, whether through the ownership of voting securities, by contract, or otherwise.

17 C.F.R. § 230.405. Attorneys fall within the ambit of "controlling persons" when they are in some sense culpable participants in the acts perpetrated by the controlled person. *Westlake v. Abrams,* 565 F.Supp. 1330, 1350 (N.D.Ga.1983); *Westlake v. Abrams,* 504 F.Supp. 337, 349 (N.D. Ga.1980); *Felts v. National Account Systems Association, Inc.,* 469 F.Supp. 54, 68 (N.D.Miss.1978). It is difficult to perceive that a corporation and its board of directors would not follow the advice of counsel in situations concerning documents to be issued for examination by prospective investors, particularly where such documents bear the imprimatur of expertise on the part of such counsel.

Nor is there sufficient substance to the allegations that fraud is insufficiently pleaded with respect to the 10b–5 violation to warrant dismissal on such ground. In light of the decision in *Goldman v. Belden, supra,* and the specificity of the pleadings set forth in paragraph 20 of the complaint, dismissal on such ground is not warranted.

 Similarly, there is no basis upon which to order dismissal on any argument based on claims of failure to distinguish as between "primary" and "secondary" liability on the part of the respective law firm defendants. Clearly, the duties asserted arise from the relationship between the parties in that the expert lawyers are claimed to have participated in the preparation of allegedly fraudulent and misleading documents disseminated to the investing public. *In re Flight Transportation Corporation Securities Litigation,* 593 F.Supp. 612, 617–18 (D.Minn.1984). Nor do the pleadings herein equate with a mere claim of "inaction" on the part of these defendants. The duty imposed on those in position of the law firms may be stated as follows.

It is claimed that a lawyer is entitled to rely on the statements of his client and that to require him to verify their accuracy would set an unreasonably high standard. This is too broad a generalization. It is all a matter of degree. To require an audit would obviously be unreasonable. On the other hand, to require a check of matters easily verifiable is not unreasonable. Even honest clients can make mistakes. The statute imposes liability for untrue statements regardless of whether they are intentionally untrue. The way to prevent mistakes is to test oral information by examining the original written record.

*Escott v. Barchris Construction Corporation, supra,* 283 F.Supp. at 690.

In sum, the Court finds no basis for granting dismissal on any of the grounds advanced by either Ropes or Sulloway in this litigation. For reasons previously indicated, there is accordingly no basis for dismissal of the pendent claims nor for requirement of an undertaking as requested by Sulloway.[34]

As was the case with the derivative actions, the Court concludes that with respect to each of the class actions, each of the parties involved should bear its own attorney's fees.

### Conclusion

In sum, the Court has dismissed without prejudice the derivative actions herein and has similarly dismissed without prejudice those portions of the class action claims of the plaintiffs Seidel and Stepak which are beyond the statutory period. No reason now appears why the class actions directed against those defendants other than the law firms should continue with a multiplicity of claims when the respective interests of the plaintiffs can be fully considered and disposed of in the amended complaint filed

---

**34.** Sulloway requests an undertaking in the amount of $50,000 if dismissal is not herewith

ordered.

in C. 84–541–D.[35] The class action counsel are herewith directed to confer together and to advise the Clerk of this Court not later than 4 p.m. on September 20, 1985, as to why all other actions in the class action series brought against other than the law firm defendants should not now be dismissed with prejudice. This would result in only three actions [36] pending, all of which could be more efficiently handled and disposed of on a consolidated basis.

All future proceedings concerning discovery and other necessary trial preparation are herewith referred to the Magistrate for his consideration in the usual course pursuant to Local Rules A(8) and (10) of the "Rules For The Magistrate's Duties".[37]

SO ORDERED.

---

**35.** It is premature at this juncture for the Court to attempt to certify the class actions pursuant to the requirements of Rule 23, Fed.R.Civ.P. Not only is there no motion for certification pending, but the record is not sufficiently developed to permit such action at this stage of the proceedings.

**36.** If the obviously superfluous actions in the series brought against defendants other than the law firms are dismissed, only C. 84–541 would remain with respect to those defendants, while C. 85–79 and C. 85–287 would be the remaining actions as against the law firm defendants.

**37.** Heretofore the Magistrate had designated C. 84–220–D as the master file for the filing of relevant documents. As that action has now been dismissed, the Court herewith designates, and henceforth C. 84–541–D shall serve as such master file for the filing of all future pleadings.