**GREYHOUND LEASING & FINANCIAL CORPORATION, Appellant,**

v.

**NORWEST BANK OF JAMESTOWN, N.W.; Wimbledon Implement, Inc.; Russell Hoggarth; Henry K. Mackenzie; the partnership of Mackenzie, Jungroth, Mackenzie and Reisnour; the partnership of Jungroth, Mackenzie and Reisnour; and James R. Jungroth, Appellees.**

No. 87–5349.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1988.

Decided Aug. 26, 1988.

Thomas Darling, Minneapolis, Minn., for appellant.

Mart R. Vogel, Fargo, N.D., for appellees.

Before HEANEY, Circuit Judge, McMILLIAN, Circuit Judge, and HILL *, Senior District Judge.

IRVING HILL, Senior District Judge.

In this opinion we affirm a district court judgment in favor of a lawyer charged with professional negligence.

### FACTS

Appellant Greyhound Leasing & Financial Corporation ("Greyhound"), among its other businesses, leases farm machinery and equipment to farmers and finances farmers' purchase of such equipment. In 1982, a loan broker named Kuehl brought to Greyhound a proposal to loan over $1 million to a Jamestown, North Dakota farmer named Mutschler. At the time Mutschler was regarded by banks and others in his home community as a successful, prosperous and reputable farmer who owned and farmed large valuable land holdings. The loan was to be secured by a first lien on many pieces of farm equipment.[1] After investigation, Greyhound de-

---

* The HONORABLE IRVING HILL, Senior United States District Judge for the Central District of California, sitting by designation.

1. Included were three combines, six tractors, six plows and eleven drills.

cided to go forward with the loan and began the preparation of appropriate documents.

The documents prepared by Greyhound for the transaction did not reveal its true nature. The documents were drawn so as to portray Greyhound as having bought the farm equipment in question, all new, from a local farm equipment dealer, Wimbledon Implement Inc. ("Wimbledon"), and, simultaneously with its purchase, leasing the equipment to Mutschler. Greyhound insisted on structuring the deal in this fashion, rather than as a loan or financing agreement, so that it could obtain both the investment tax credit and depreciation on the farm machinery. On a straight loan or financing deal, Greyhound would get neither tax advantage.

In reality, none of the machinery and equipment covered by the loan was new, except for one tractor that had not yet been delivered to Mutschler. Mutschler had already owned and possessed all of the other equipment for many months, some for a year or more. He had bought some of it from Wimbledon and some from other vendors. Either at the time of his original purchase or during his months of possession, Mutschler had created liens on all of the already owned equipment. Among the lien holders were Wimbledon, John Deere and others.

The district judge[2] found that Greyhound employees knew or should have known that practically all of the equipment was old and had been owned and possessed by Mutschler for a long time. He further found that those facts were known to Greyhound's broker, Kuehl, whose knowledge he imputed to Greyhound. Both Greyhound and Kuehl, however, were unaware of the liens.

To evidence the purported purchase and lease transaction Greyhound created and prescribed a number of documents which it required be executed according to its directions. Among them was an attorney's opinion letter to be signed by the lessee's own local attorney. The text of the opinion letter which Greyhound prescribed is set forth in the appendix. The operative paragraph is a statement by the lawyer to Greyhound that the lawyer is "not aware of any liens or encumbrances ... created or suffered by the lessee nor have they granted or conveyed any liens or encumbrances of any nature with respect thereto ..."[3]

Greyhound desired the lessee's own local lawyer to sign the opinion letter because it believed that such a lawyer would be familiar with the lessee's prior business activities. That expectation was not fulfilled in this case. Mutschler selected Mr. H.K. Mackenzie of the Jamestown, North Dakota firm of Jungroth, Mackenzie and Reisnour. Mackenzie had never done any work for Mutschler before. Mackenzie signed the opinion letter on the day he was first contacted by Mutschler.

Mutschler brought to Mackenzie not only the prescribed opinion letter form but also some other documents connected with the transaction, all in the form which Greyhound had required. Included was a lease agreement between Greyhound and Mutschler purporting to describe a lease of new equipment. Mackenzie orally inquired of Mutschler whether the equipment was in fact new. Mutschler assured him that it was. Mackenzie also orally inquired whether Mutschler had yet obtained possession of the equipment or any ownership interest in it. Mutschler answered in the negative. Mackenzie then, without further inquiry or checking, signed the opinion letter.

In North Dakota, liens on farm equipment are registered in the County Register of Deeds. There are no title documents for such equipment similar to the titles employed for automobiles. Under North Dakota law, one who has not acquired an ownership interest in farm equipment may not create a valid lien on it. *Cf.* N.D.C.C. § 35–01–05. Relying on Mutschler's repre-

---

**2.** The Honorable John B. Jones, United States District Judge for the District of North Dakota.

**3.** Note that this language is not only ungrammatical, it is also imprecise and ambiguous on its face.

sentations that the equipment was new and not yet owned or possessed by him, Mackenzie believed that there was no possibility of any pre-existing lien. He could have ascertained the true facts, i.e., that Mutschler had owned the equipment for a considerable time and had placed several valid liens on it, by going to the Registrar's office about a block away or by telephoning that office. He did neither.

Greyhound was satisfied with Mackenzie's letter. Preparation and execution of other documents to consummate the deal moved on apace. The most important of these documents was an invoice from Wimbledon to Greyhound listing the equipment sold and listing it all as new. That invoice was redrafted several times at Greyhound's direction. The description and purchase price of various items were changed in the various drafts at Greyhound's request. The final version of the invoice was dated March 30, 1982, 13 days after Mackenzie signed the opinion letter. The invoice reflected an overall sales price of $1,046,160, exclusive of sales tax. Greyhound issued two checks to Wimbledon in April, 1982 which totaled that amount. One covered the purported purchase price of all of the equipment except the undelivered tractor. The second check covering the tractor's price was issued after the tractor was delivered.

Wimbledon kept $106,965 of the proceeds for itself and transmitted the rest to Mutschler who deposited it in the Norwest Bank of Jamestown. About $300,000 of the deposited money was taken by the bank as an offset against Mutschler's pre-existing unsecured indebtedness to the bank. Mutschler used the rest for farming operations. None of the money was used to discharge any of the pre-existing liens on the equipment.

Not long after Greyhound's money was paid and deposited as above stated, Mutschler filed for bankruptcy. The true facts about Mutschler's prior purchase and possession of the equipment and the valid liens existing at the time of Greyhound's payment, then became known. Greyhound thus found itself with an obligation of over $1 million due from Mutschler, a bankrupt, with no collateral except for a first lien on one tractor. Greyhound recovered $30,000 on that collateral.

On March 1, 1984, Greyhound filed the instant case in the U.S. District Court for the District of North Dakota. Named as defendants were Wimbledon, Norwest Bank and Mackenzie.[4] After a six-day court trial, the Court on April 22, 1987 rendered its judgment in a lengthy oral unpublished opinion. Norwest Bank was found not liable to Greyhound. Greyhound was awarded a judgment against Wimbledon for $294,000. Greyhound's total loss was fixed at $490,000 and reduced because of comparative negligence. No appeal has been filed as to either of those judgments. Finally, the trial court held that Mackenzie was not liable to Greyhound and awarded a judgment to him. Greyhound's sole appeal involves the Mackenzie judgment.

There were many counts in Greyhound's complaint against Mackenzie. But all of them came down to a claim of negligence, i.e., that Mackenzie failed to make a lien search before signing the opinion letter. The district judge rejected Greyhound's claim on two alternative grounds. He held, first, that the wording of the opinion letter imposed no duty on Mackenzie to make any investigation as to the existence of liens. The trial judge construed the opinion letter as being only a representation that the lawyer personally was aware of no liens. Alternatively, the trial court held that even if the opinion letter form could be interpreted more broadly so as to require a reasonable investigation of the existence of liens, and even if Mackenzie was negligent in failing to make a lien search, the negligence of Greyhound exceeded any such negligence of Mackenzie.

Appellant argues quite persuasively that the trial court's construction of the opinion letter constituted error. But even if its

4. The Mackenzie law firm had undergone several changes in the intervening years and each successor entity was separately named.

construction is viewed as erroneous, a reversal is not required. The judgment must nevertheless be affirmed if the trial court's alternative ground is correct and free from error.

## THE MERITS

■ Even if one assumes arguendo that Mackenzie was negligent in signing the opinion letter without an investigation of liens, there is ample evidence in the record to support the trial judge's conclusion that Greyhound was also negligent and that its negligence exceeded that of Mackenzie. A plaintiff is barred from recovery under North Dakota law where his contributory negligence is greater than the defendant's negligence. N.D.C.C. § 9–10–07 (1973).

■ The negligence of Greyhound is obvious both from the knowledge and actions of the broker, Kuehl, and the knowledge and actions of certain of its full time employees. Mr. Kuehl, the broker, did much more for Greyhound than merely bring the lender and borrower together. Kuehl was compensated by Greyhound and carried a Greyhound business card. In fact, no employee or representative of Greyhound other than Kuehl met or dealt with Mutschler before the transaction closed. Greyhound commissioned Kuehl to obtain much of the information necessary for documenting the transaction including the descriptions and serial numbers of the various pieces of equipment, financial statements of Mutschler, invoice documents, etc. Greyhound had Kuehl transmit its instructions for the form and contents of the documents to those responsible for preparing and signing them. The trial judge concluded that what Kuehl knew about the true facts was imputable to Greyhound. The trial judge found that Kuehl knew at all times that the transaction dealt with old equipment which had been owned and possessed by Mutschler for a long time.

We find no error of law in the trial judge's imputing Kuehl's knowledge to Greyhound and ample support in the record for his findings as to what Kuehl knew. Furthermore, regardless of what Kuehl knew and its imputability to Greyhound,

there was evidence in the record that responsible full-time employees of Greyhound also knew that the equipment involved was not new and was already in Mutschler's possession. The record indicates that Mr. Lindell, Greyhound's district sales manager, and Mr. Witmer, Greyhound's appraiser, both knew the equipment was not being presently sold by Wimbledon and wasn't new. Thus it was clearly negligent for Greyhound, with such knowledge, to prepare the inaccurate and misleading documents, intending them to reach Mackenzie and be a basis for his action.

The trial court's oral opinion also found Greyhound to have been negligent in a second respect. Greyhound was held to have been negligent in failing to make its own independent investigation of the lien situation. Again, the record supports the trial judge's view. Greyhound claims to have paid out $1 million in reliance on the opinion of a lawyer whom it never contacted or instructed and to whom it arranged the transmittal of seriously inaccurate documents. It devised for the lawyer to sign a most equivocal form of letter opinion which does not clearly set forth the representation which Greyhound now says it thought it was getting from the lawyer, and relied upon it. It seems to us eminently reasonable to hold, as the trial judge did, that under the circumstances, Greyhound had an independent obligation to investigate the existence of liens. It seems equally reasonable to hold, as the trial judge did, that Mackenzie's negligence, if any, was substantially outweighed by that of Greyhound.

Additional support for the conclusion that Greyhound's negligence outweighed Mackenzie's came from two North Dakota lawyers testifying as experts. They testified that a lawyer receiving the documents which Greyhound had originated and prescribed, and receiving the information which Mutschler, as client, provided, would not reasonably be required to make a lien search. A lawyer in that position, said the experts, could reasonably assume that there could not possibly be any valid liens on the equipment. This expert testimony

tended to exculpate Mackenzie entirely from any finding of negligence on his part. But apart from that, it indicates that the nature of Mackenzie's negligence, if any, was far less serious and culpable than the negligence of Greyhound.

For the reasons above stated, the trial court's judgment is affirmed.

McMILLIAN, Circuit Judge, concurring.

I agree that, even if one assumes that Mackenzie was negligent in signing the opinion letter without investigation, Greyhound's own negligence substantially exceeded that of Mackenzie and thus, under North Dakota law, barred Greyhound from recovery. There was ample evidence in the record that Greyhound employees knew the true condition of the farm equipment and negligently prepared inaccurate and misleading documentation in connection with this transaction and negligently failed to conduct an independent investigation for liens. Accordingly, I concur in the decision to affirm the judgment of the district court. I write separately only to state my disagreement with the district court's interpretation of the opinion letter and evaluation of the reasonableness of the attorney's conduct under the circumstances.

As a preliminary matter, this case should caution attorneys against excessive reliance upon exemplars, form letters and other model documents, especially when those documents have been drafted by parties that are potentially adverse to their clients.

First, I do not agree with the district court's interpretation of the opinion letter as only requiring Mackenzie to truthfully state his personal knowledge of any liens and his client's business affairs. In my view, the district court's interpretation is too narrow. The opinion letter called for the attorney's professional opinion. Moreover, the opinion letter expressly prefaced the numbered "opinion" paragraphs with this sentence: "We have conducted such investigations as we have deemed necessary, in order to render the opinions set forth below." Under these circumstances,

I cannot agree that the attorney's obligation under the terms of the opinion letter was limited to his personal knowledge of any liens or his client's business affairs.

Second, and more importantly, I believe that, under these circumstances, the exercise of due diligence, or reasonable care, required Mackenzie to conduct a limited investigation. Given the involvement of the farm equipment dealer in the transaction, it would have been difficult, if not impossible, to verify Mutschler's representation that the farm equipment was new and had not yet been delivered by contacting the farm equipment dealer. However, the existence of any liens on the farm equipment could have been easily ascertained by conducting a lien search at the county register of deeds.

I do not fault the attorney for his legal analysis. Given the facts provided to him by his client, his opinion that the farm equipment could not have been subject to liens or other encumbrances was correct. What I do find fault with is the attorney's failure to conduct a limited investigation. Attorneys should accept very little at face value when they are called upon for professional advice.

A similar situation involving the failure to investigate was at issue in *Escott v. Barchris Construction Corp.*, 283 F.Supp. 643 (S.D.N.Y.1968). The court's observations in that case are particularly appropriate here.

> It is claimed that a lawyer is entitled to rely on the statements of his [or her] client and that to require him [or her] to verify their accuracy would set an unreasonably high standard. This is too broad a generalization. It is all a matter of degree. To require an audit would be unreasonable. On the other hand, to require a check of matters easily verifiable is not unreasonable. Even honest clients can make mistakes.... The way to prevent mistakes is to test oral information by examining the original written record.

*Id.* at 690; *see also Seidel v. Public Service Co.*, 616 F.Supp. 1342, 1361–62 (D.N.H. 1985). *Cf. Greycas, Inc. v. Proud*, 826 F.2d 1560 (7th Cir.1987) (attorney made

misrepresentations re UCC lien search in opinion letter), *cert. denied,* — U.S. —, 108 S.Ct. 775, 98 L.Ed. 862 (1988).

APPENDIX

TO BE PLACED ON ATTORNEY'S LETTERHEAD

(Date)

Greyhound Leasing & Financial Corporation

Greyhound Tower

Phoenix, Arizona 85077

Attention: John A. Greene, Senior Attorney

Gentlemen:

We are counsel to Fred Mutschler (D/B/A Mutschler Farms) ("Lessee") and in such capacity, we have been asked to render our opinion in connection with the transaction pursuant to which Lessee is to lease from Greyhound Leasing & Financial Corporation ("Lessor") pursuant to an Equipment Lease Agreement dated as of March 2, 1982 (together with all schedules, supplements, riders and other documents executed in connection therewith, hereinafter the "Lease") the Units described therein ("Equipment") and pursuant to an Aircraft Lease Agreement dated as of March 2, 1982 (together with all schedules, supplements, riders and other documents executed in connection therewith, hereinafter the "Aircraft Lease") the Aircraft described therein ("Aircraft").

This opinion is being delivered in accordance with the requirements of the Lease. References herein to the "Lessee" shall mean both and each of them.

We have conducted such investigations as we have deemed necessary, in order to render the opinions set forth below.

Based upon the foregoing, and having regard for such legal considerations as we have deemed relevant, we are of the opinion that:

1. The Lease and the Aircraft Lease both constitute valid obligations of the Lessee, binding and enforceable against the Lessee in accordance with their terms;

Lessee's performance under each will not result in a default or acceleration of any obligation under any agreement, commitment, or order, decree or judgment to which Lessee is a party or by which Lessee is bound; nor is the consent of, or registration with, any governmental authority required for either the execution of or performance under the Lease or the Aircraft Lease.

2. There is no litigation pending or threatened against the Lessee before any court or administrative agency which may have a materially adverse effect on its assets, business, financial condition or operations or which would prevent or hinder the performance by the Lessee of their obligations under the Lease.

3. We are not aware of any liens or encumbrances against the Equipment or the Aircraft created or suffered by the Lessee nor have they granted or conveyed any liens or encumbrances of any nature with respect thereto as of the date hereof.

4. Lessee has the power and authority to own its assets and to transact the business in which it is engaged.

Very truly yours,